No. 8061.

## The Masonic Mutual Benefit Association *v.* Beck.

Insurance.—*Contract.—Condition. —Waiver.*—A condition, that a contract of life insurance shall be void on account of any misrepresentation in the application, makes the contract voidable only at the election of the insurer.   The condition may be waived even after the death of the insured.   The demand and receipt of premiums or assessments, with knowledge of the facts, will constitute a waiver.

Witness.—*Physician.—Privileged Communication.*—The relation between physician and patient is confidential, and the former may not, to the injury of the latter or his representatives, testify to what he learned of the latter's ailments, either by examination and observation or by oral communication.

Same.—A statement, in an application for insurance, of the name and residence of the family physician of the applicant, does not operate as a consent that such physician may testify concerning the ailments of the insured.

PRACTICE.—*Quashed Deposition.*—*Exception.*—*Semble,* that a party, who has failed to save an exception to the quashing of a deposition, can not, by offering to read the deposition on the trial, obtain an available exception; certainly not unless every part of the deposition, offered as a whole, was competent.

From the Marion Circuit Court.

*C. Byfield* and *L. Howland,* for appellant.

*C. H. Aldrich, J. M. Barnett, T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellee.

WOODS, J.—The appellee obtained a judgment against the appellant upon a policy of life insurance, or certificate of membership in the society of the appellant, issued to Francis J. Beck, the husband of the appellee, and made payable to her upon his death. In answer to the complaint, the appellant alleges breaches of the warranties made by the deceased in his application for membership, concerning his health and habits, the specific breaches alleged being that the applicant had liver complaint and dropsy, and was intemperate in the use of intoxicating liquors.

The plaintiff replied by a general denial, and by way of confession and avoidance, to the following effect: "The plaintiff says, that since the death of said Francis J. Beck, to whom the certificate sued on was issued, the said defendant company, with full knowledge and notice of the matters, all and singular, set out in her answer herein, treated the said certificate or policy as a valid and subsisting one and made assessments on the same, all of which were paid, and for which payments this plaintiff now holds the receipts of the said company, signed by the secretary thereof. And the plaintiff avers that by reason of such assessments, so made as aforesaid, she has paid to said company for six deaths occurring prior to the death of the said Francis J. Beck, and for four deaths occurring subsequent to the same, amounting in the aggregate to eleven dollars and fifty cents, all of which the said defendant demanded and received as

aforesaid, and still retains, and by which this plaintiff was induced to believe, and did believe, that the said defendant company recognized the policy or certificate as a valid and subsisting one.''

The first question to be considered is, whether the facts stated in this reply constitute a sufficient response to the answer. Upon this point the counsel of appellant have advanced the following propositions : ''The payments, if any were made, were voluntary, and there was no obligation to make them, certainly not those assessments upon deaths occurring after the death of the member, Beck. To operate as a revival of a lapsed policy of insurance, the waiver of forfeiture must occur during life ; there can be no insurance of a dead man by express contract ; much less can there be by implication. So here, if Beck was not a member of the society at his death, he could not be made one after death, even by issuing a certificate in his name ; much less by any administrative act of the officers recognizing him, incidentally, as an existing member, and creating a membership by mere implication or by estoppel. *Neely* v. *The Onondaga, etc., Ins. Co.*, 7 Hill, 49 ; *Smith* v. *The Saratoga, etc., Ins. Co.*, 3 Hill, 508 ; *Philbrook* v. *The New England Mut. Fire Ins. Co.*, 37 Me. 137 ; *Diehl* v. *The Adams, etc., Ins. Co.*, 58 Pa. St. 443 ; *Carroll* v. *The Charter Oak Ins. Co.*, 38 Barb. 402.''

The counsel for the appellee, on the contrary, say : ''Our position is, that he (Beck) continued at all times a member of said society, subject to the right on the part of the latter to rescind the contract at any time, upon discovery of the alleged misrepresentations, and equally subject to confirmation ; that, although the policy by its terms provides that it shall be 'void' on a breach of any of its conditions, its legal effect is simply to render it voidable at the election of the insurer, and that the insurer can waive the forfeiture and continue the policy in force ; or, to state the proposition more broadly, in all contracts where stipulations avoiding

the same are inserted for the sole benefit of one of the parties, the word *void* is to be construed as though the contract read *voidable*."

This view seems to be sound in principle, just in practice, and is certainly well sustained by authority. *Armstrong* v. *Turquand*, 9 Irish C. L. 32 ; S. C., 3 Bigelow Life & Acc. 350 ; *Viele* v. *The Germania Ins. Co.*, 26 Iowa, 1 ; *Bouton* v. *The American Mut. Life Ins. Co.*, 25 Conn. 542 ; *Miner* v. *The Phœnix Ins. Co.*, 27 Wis. 693 ; *Webster* v. *The Phœnix Ins. Co.*, 36 Wis. 67 ; *Gans* v. *The St. Paul F. & M. Ins. Co.*, 43 Wis. 108 ; *Erdmann* v. *The Mut. Ins. Co., etc.*, 44 Wis. 376 ; *Viall* v. *The Genesee Mut. Ins. Co.*, 19 Barb. 440 ; *Clark* v. *Jones*, 1 Denio, 516 ; *Frost* v. *The Saratoga, etc., Ins. Co.*, 5 Denio, 516 ; *North Berwick Co.* v. *New England, etc., Ins. Co.*, 52 Me. 336 ; *Sims* v. *The State Ins. Co.*, 47 Mo. 54 ; S. C., 4 Am. R. 311 ; *Tuttle* v. *Robinson*, 33 N. H. 104 ; *Young* v. *The Mut. Life Ins. Co.*, 4 Bigelow L. & A. 1 ; *Garber* v. *The Globe Mut. Ins. Co.*, 6 Bigelow L. & A. 122.

In the first two cases cited the subject is discussed at length. In *Armstrong* v. *Turquand, supra*, CHRISTIAN, J., speaking for the court, says : "Now, I believe I am correct in this (and it is very remarkable), that amongst those (cases) cited for the defendant (at least during the argument which took place after I had the honor of a seat in this court, the case having been argued before), not one was referred to (nor am I aware that any exists which is law at this day), in which the word 'void,' occurring in any private instrument, such as a deed or will, was held to bear that extreme sense which excludes the possibility of confirmation after the act of avoidance."

And in *Viele* v. *The Germania Ins. Co., supra*, the Iowa court says : "The position of defendant's counsel, which is supported by several authorities, is to the effect that upon a breach of the conditions of the policy by the assured, which would defeat recovery thereon, it becomes absolutely void—

as it were, dead—and that nothing short of a new creation could impart vitality to it. This doctrine is certainly unsound when applied to other contracts ; for, on the contrary, after default in the conditions by one party, the other may waive the forfeiture and treat the instrument as of binding force upon himself. No reasons can be given to except policies of insurance from the operation of this rule.''

The logical and necessary deduction from this doctrine is, that a distinct act of affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or of the right to annul the contract ; and so it is held in several of the cases already cited. See *Armstrong* v. *Turquand*, *supra;* *Viele* v. *The Germania Ins. Co.*, *supra;* *Tuttle* v. *Robinson*, *supra;* *Frost* v. *The Saratoga Mut. Ins. Co.*, *supra;* *Viall* v. *The Genesee Mut. Ins. Co.*, *supra;* *Gans* v. *The St. Paul F. & M. Ins. Co.*, *supra.* There is no reason why this waiver may not occur after, as well as before, the death of the person whose life was insured.

The remaining question is, whether the court erred in excluding certain depositions which the appellant offered to read on the hearing. The record shows that, at the February term of the court, on motion of the appellee, the depositions in question were quashed ; and thereupon, upon the appellant's motion, the cause was continued, the appellant not having filed any bill of exceptions to the quashing of the depositions, nor having obtained leave to file such bill at a subsequent time. It follows that, if an exception was announced to the ruling of the court at the time it was made, the benefit of it has been lost. *Sohn* v. *The Marion, etc., G. R. Co.*, 73 Ind. 77. But, upon the hearing had at the next term of the court, the appellant offered to read the depositions, and by a proper bill of exceptions, which recites the ruling of the court on the motion to suppress at the previous

term, and the appellant's exception thereto, has preserved an exception to the refusal of the court to permit the depositions to be read on the trial. This condition of the record involves an important question of practice : When a deposition has been quashed, and there has been a failure to preserve an exception to the ruling, can the party against whom the ruling was made be allowed to offer to read the quashed deposition on the trial, and thereby obtain the use of the testimony, or the benefit of a valid exception to its exclusion? If this can be done, it is manifest that serious surprises may often befall the opposite party, resulting in necessities for delay, or in defeat or nonsuit.. There is, perhaps, no want of power in the court so long as the case is pending, untried, to reconsider and change its ruling upon a motion to quash or suppress a deposition, but the proper rule of practice in such cases must be, that the party who designs to move for such reconsideration should make the motion a reasonable time before the commencement of the trial. But, as counsel have not presented this question, we decide nothing upon it, and pass to consider whether, assuming that the appellant had a right to have the depositions admitted in evidence, if their contents were in themselves admissible, the court erred in excluding them as offered. The fact that the court had suppressed the depositions, and the appellant had saved no exception to the ruling, has, at least, this important bearing on the question, namely, that the appellant had no right to offer the depositions each as a whole (and so he did offer them), if they contained anything which was objectionable. By failing to move to suppress, the appellee would have waived objections to the depositions, or parts thereof ; but, the motion to suppress having been made and sustained, it is clear that, on the trial, the appellant could properly be permitted to read only such parts of the depositions as were free from just ground of objection ; and, if the offer to read included irrelevant or incompetent matter,

or matter to which the deponent was not competent to testify, there was no error in rejecting the entire offer, though some parts of the proposed evidence may have been competent. The witnesses, whose depositions were excluded, were physicians who had treated the deceased when sick, and one of them during his last illness. Their testimony in the main concerned the ailments of the patient when under their treatment, and tended strongly to support the allegations of the answer, that he had liver complaint and dropsy, and perhaps died from the effects of those maladies. The testimony was excluded on the ground that the witnesses were incompetent.

By the terms of the statute on the subject in force when the trial was had, physicians were not competent witnesses "as to matters confided to them in course of their profession; * * * * unless with the consent of party making such confidential communication." The question to be decided, therefore, is, whether the physician, who, in the course of the treatment of his patient has obtained a knowledge of his ailments, is competent to testify in relation thereto, in a civil action, without consent of the patient or of the party representing the patient.

The position of counsel for the appellant, as we understand it, is, that before the testimony of the physician can be excluded, under the statute, it must appear affirmatively that the information was *confided* to him which he is called on to disclose; and that he be required to testify as to what he learned by observation, or by an examination of the patient, and, indeed, as to what the patient told him, unless learned or told under an injunction of secrecy, express or implied, as in cases of secret or private diseases.

We think the statute ought to have, and was designed to have, a much broader scope. The relation of physician and patient, no matter what the supposed ailment, should be protected as strictly confidential, subject only to the right

of the patient to waive the restriction ; or, if the patient shall have died, then subject to the choice of the party who may be said to stand, in the place of 'the deceased, and whose interests may be affected by the proposed disclosure.

His admission to the bedside of the sick one may enable the experienced and skilful practitioner to discern more of the patient's condition and of the cause which brought it about, than the patient himself could tell, or would be willing to reveal ; and whether, therefore, the information which he gets is obtained in one way or the other should make no difference in the application of the rule. ''A dumb patient and one whose vocal organs have been paralyzed, are equally protected by the statute with others. The secrets of the sick chamber can not be revealed, because the patient was too sick to talk, or was temporarily deprived of his faculties by delirium or fever, or any other disease, or because the physician asked no questions. The statute seals the lips of the physician against divulging in a court of justice the intelligence which he acquired while in the necessary discharge of his professional duty. It was enacted for the purpose of extending to the relation between a patient and his physician the same rule of public policy by means of which the common law protected the professional confidence necessarily existing between a client and his attorney. We deem it a wise and salutary enactment. * * * It was intended to remove from the law a reproach which had been long felt and often expressed by judges, and it should be interpreted and enforced in a liberal spirit, with a view to effectuate its purpose.'' *Edington* v. *Mut. Life Ins. Co.*, *etc.*, 5 Hun, 1.

The foregoing was said in reference to the law of New York, but we deem it equally applicable to our own law on the subject. Counsel for the appellant, however, have urged upon our attention the recent case of *Edington* v. *The Ætna Life Ins. Co.*, 77 N. Y. 564, wherein, it is claimed, the New

York Court of Appeals has enunciated a different doctrine. But the language of the opinion in that case, upon which stress is laid, does not express the opinion of the court, but only of the judge who wrote it, the other judges concurring in the result only. The earlier and later cases decided by that court are in accord with the doctrine above declared. *Grattan* v. *The Metropolitan Life Ins. Co.*, 80 N. Y. 281; *Dilleber* v. *The Home Life Ins. Co.*, 69 N. Y. 256; *Edington* v. *The Mutual Life Ins. Co.*, 67 N. Y. 185. See also *Briggs* v. *Briggs*, 20 Mich. 34; *Collins* v. *Mack*, 31 Ark. 684.

The further point is made, that the deceased, in his application for membership in the society, had referred the company to the physicians whose testimony was excluded, and had thereby consented that they might testify. It is true that the application contained a statement, in answer to an interrogatory, of the name and residence of the family physician of the applicant, but nothing else to indicate the alleged consent. To infer such consent from such a statement would be both unreasonable and unjust. *Edington* v. *The Mutual Life Ins. Co.*, *supra*. If insurance companies desire to secure from their policy holders a waiver of so important a right, it should be accomplished by a stipulation too plain and direct to be misunderstood.

There is no error in the record, and the judgment is affirmed, with costs.