## METROPOLITAN LIFE INSURANCE COMPANY *v.* WILLIS, ADMINISTRATOR.

[No. 5,567. Filed January 3, 1906.]

1.  INSURANCE.—*Warranties.*—*Breach.*—*Delivery to Person in Unsound Health.*—Where assured warranted that he was of sound mind, that he was in good health and that he had never had "disease of the brain," and agreed that the policy should be void unless delivered to him while in good health, the facts that he had been insane, and before the delivery of the policy

had been pronounced so by a legal inquisition, and taken to an insane asylum where he died two years later are sufficient for the insurer to avoid such policy.   p. 50.

2.   INSURANCE.—*Warranties.—Breach.—Receipt of Premiums with Knowledge.*—Where the insurer knew of the assured's breach of warranties and that the policy was delivered to assured when not in sound health, but takes premiums with the knowledge of such facts, such insurer can not avoid such policy.   p. 51.

3.   SAME.—*Principal and Agent.—Collectors.*—The knowledge of an agent of an insurance company, with authority to "write applications and collect the money" and turn it over to the company, as to insured's breach of warranty is imputable to such company.   p. 52.

4.   EVIDENCE.—*Witnesses.—Competency.—Waiver.—Insurance.— Executors and Administrators.*—Where assured agreed in his application for insurance to permit his physician to testify, his administrator can not object to the competency of such physician to testify.   p. 53.

From Marion Circuit Court (12,871) ; *Henry Clay Allen,* Judge.

Action by Cassius M. C. Willis as administrator of the estate of Charles A. Taylor, deceased, against the Metropolitan Life Insurance Company.   From a judgment for plaintiff, defendant appeals.   *Affirmed.*

*Chambers, Pickens, Moores & Davidson,* for appellant.

*John W. Bowlus,* for appellee.

WILEY, J.—From a judgment against appellant upon a life insurance policy it prosecutes this appeal.   Complaint in one paragraph.   Answer in three paragraphs, and reply in two.

No question is presented as to the sufficiency of any of the pleadings, except the complaint, and that is waived by a failure to discuss it.   Trial by the court, resulting in a general finding and judgment for appellee.

Appellant's motion for a new trial overruled.   Under the assignment and the argument in support thereof, it is entitled to have reviewed the ruling of the court on such motion.   Four questions are presented by the motion: (1) The finding is not sustained by sufficient evidence;

(2) the finding is contrary to law; (3) the court erred in overruling appellant's motion to find for it; and (4) the court erred in admitting and refusing to admit certain evidence.

The policy of insurance upon which the action is based was issued upon the written application of the insured. In that application he answered certain questions, and warranted such questions to be true. Such warranty is as follows: "And I further declare, warrant and agree that the representations and answers made above are strictly correct and wholly true; that they shall form the basis and become part of the contract of insurance, if one be issued, and that any untrue answers will render the policy null and void, and that said contract shall not be binding upon the company unless upon its date and delivery the insured be alive and in sound health. * * * And I expressly agree and stipulate that in any suit upon the policy herein applied for, any physician who has attended or may hereafter attend me may disclose any information acquired by him in anywise affecting the declarations and warranties herein made."

In his application his answers and representations that are at all material are as follows: "I have never * * * had disease of the brain." "I am now in sound health, * * * nor have I any * * * mental defect or infirmity of any kind." "The following is the name of the physician who last attended me, the date of the attendance, and the name of the complaint for which he attended me: 1900. Dr. Johnson. Grippe." "I have not been under the care of any physician within two years, unless as stated in the previous line, except ———." "I have never met with any serious personal injury, nor never been seriously ill, except as stated below, and for the complaint named, and no other, when I was attended by the following named physicians, and no other: ———."

This application was made and dated June 1, 1901.

The policy was dated June 10, 1901, and delivered the following day. Between the dates of the application and the delivery of the policy an inquest had been held inquiring into the mental condition of the insured, and he was declared to be insane, and was ordered to be incarcerated in the insane asylum. He was so incarcerated, and within about two years died of paresis. The evidence is without contradiction that the insured was insane for some time before he applied for insurance, and was so when the policy was issued; that he remained in that condition until he died, and that the cause of his death was a diseased brain. The evidence also shows that about five years before the policy was issued the insured received a great mental shock, by having a sunstroke. It also shows that in 1899 he had malarial fever, and was attended by Dr. Johnson; also, that for six months or more before June, 1901, he had been attended by and prescribed for by two other physicians.

The policy recites that it is issued upon the written application of the insured, and that no obligation is assumed unless, on the date the policy is delivered, "the insured is alive and in sound health." The evidence shows conclusively that he was not in "sound health" when the policy was delivered. It is unnecessary to cite authorities in support of the proposition that an insurance company has the right to make such conditions a part of its contract of insurance. These undisputed facts establish such a breach of the contract as to relieve appellant of liability. *Neff* v. *Metropolitan Life Ins. Co.* (1906), 39 Ind. App. —; *Thompson* v. *Travelers Ins. Co.* (1904), 13 N. Dak. 444, 101 N. W. 900; *Stringham* v. *Mutual Ins. Co.* (1904), 44 Ore. 447, 75 Pac. 822.

It does not necessarily follow, however, that the contract may not be enforced for other reasons and upon other grounds. Counsel for appellee has not controverted

2. the above statement of facts or legal propositions, but seeks to parry their force by invoking the doc-

trine of waiver. In a second paragraph of reply appellee admits that the insured was declared insane after he applied for insurance, but that appellant demanded and received the payment of premiums of the wife of the assured with full knowledge that he was insane, and continued to demand and receive such premiums up to the time of his death. The uncontradicted evidence supports the facts pleaded in the reply. The wife of the insured paid all the premiums, paying the last one on the day he died, and a short time after his death, but before she or appellant's collector had been informed thereof. The agent who took the application delivered the policy and collected the premiums, was informed by the wife of the insured, soon after the policy was issued, when he went to her to collect the premium, that her husband was insane, and had been sent to the insane asylum. She asked him whether she should pay the premiums under such conditions, and he replied: "Why, yes; the company has paid many a claim that died in the insane hospital. * * * You are not responsible for what happened to your husband after it was written up. Of course, keep it up."

Under these conditions appellant accepted nearly one hundred weekly payments. To avoid the force of these facts, appellant's counsel assert that the agent who made the collections, with knowledge of the facts, could not bind the company, and hence no waiver is shown.

It is exhibited by the evidence that the scope of this particular agent's duties was to "write applications, and collect the money" and turn it over to the company. It being within the scope of his agency to collect premiums, it must be held that his knowledge was the knowledge of his principal, and hence, when he collected premiums, and paid them to appellant, with knowledge of the facts, such knowledge must be imputed to it. The authorities in this jurisdiction all affirm this rule. *Supreme Court, etc.,* v. *Sullivan* (1901), 26 Ind. App. 60; *Supreme*

*Tribe, etc.,* v. *Hall* (1900), 24 Ind. App. 316, 79 Am. St. 262; *Northwestern, etc., Assn.* v. *Bodurtha* (1899), 23 Ind. App. 121, 77 Am. St. 414; *Insurance Co.* v. *Wolff* (1877), 95 U. S. 326, 24 L. Ed. 387. A contrary rule would be monstrous and open the way to fraud and injustice.

The remaining question for decision is the exclusion of evidence offered by appellant. In the application for insurance the insured expressly agreed and stipulated that in any suit upon the policy any physician who had attended him might disclose any information acquired by him in anywise affecting the declarations and warranties made in the application. A physician was called to visit the insured on June 4, 1901, and appellant examined him as a witness in its behalf. He was asked this question: "What disease, if any, was he afflicted with at that time?" Objection was made that the witness was not competent to testify and answer the question, for the reason that it was a "priviliged communication between physician and patient." Appellant offered to prove by the answer that at the time the insured was suffering from "disease of the brain," etc. The statute (§505 Burns 1901, cl. 4, §497 R. S. 1881), which makes inviolate matters communicated by a patient to his physician in the course of his professional business, has always been strictly construed, and the rule is that such confidential relations will be protected by the courts, except where the patient consents to their revelation by the physician.

In *Penn Mut. Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 50 Am. Rep. 769, it was said: "Notwithstanding the absolutely prohibitory form of our present statute, we think it confers a privilege which the patient, for whose benefit the provision is made, may claim or waive."

Here the assured, by an agreement in writing, waived this statutory privilege, and we have no doubt but that he had a right to do so. His waiver must operate as such to

those claiming under him. *Adreveno v. Mutual, etc., Life Assn.* (1888), 34 Fed. 870; *Foley v. Royal Arcanum* (1896), 151 N. Y. 196, 45 N. E. 456, 56 Am. St. 621. Our conclusion is that the court erred in excluding the evidence. But we can not regard this as reversible error, for the exclusion of the evidence in nowise prejudiced the rights of appellant. For the reasons stated, appellee was entitled to judgment, and the result could not have been different if the excluded evidence had been admitted.

Judgment affirmed.