## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY v. GORMAN.

[No. 7,192. Filed April 7, 1911.]

1. EVIDENCE.—*Railroads.—Statutory Signals.—Admissions.*—In an action for damages for injuries received at a railroad crossing on account of the alleged failure to give the statutory signals, testimony that plaintiff stated that he heard the train, but thought he had time to cross the track, is admissible. p. 434.

2. EVIDENCE.— *Confidential Communications.— Physicians.— Common Law.*—At the common law confidential communications made to a physician were not privileged, but they are now by statute. (§520 Burns 1908, §497 R. S. 1881.) p. 434.

3. EVIDENCE.—*Communications to Railroad Surgeon.*—Communications made to a railroad company's surgeon by a person injured at a railroad crossing are not privileged, where such surgeon did not treat the case, and where he informed such person that his object was to secure information for the use of the company. pp. 434, 438.

4. EVIDENCE.— *Confidential Communications.— Burden of Showing.*—The burden of showing communications to be confidential rests upon the party asserting that they are such. p. 437.

From Orange Circuit Court; *Thomas B. Buskirk,* Judge.

Action by John Gorman against the Chicago, Indianapolis and Louisville Railway Company. From a judgment on a verdict for plaintiff for $6,000, defendant appeals. *Reversed.*

*E. C. Field, H. R. Kurrie, W. J. Buskirk* and *W. H. Voyles,* for appellant.

*Perry McCart* and *Hottel & Hottel,* for appellee.

IBACH, J.—Appellee recovered damages against appellant for injuries sustained by reason of the colliding of one of its freight trains with him as he was attempting to pass over the company's tracks in a wagon at a crossing over a highway in Orange county, Indiana.

The amended complaint is in three paragraphs. The first paragraph seeks damages for loss of personal property, the second, on account of personal injuries sustained, and the third, on account of the loss of personal property and for personal injuries. Each paragraph is based upon the alleged negligence of appellant in failing to give the statutory signals when the train which ran against appellee was approaching the crossing described in appellee's complaint.

The cause was put at issue, and a trial resulted in a verdict in favor of appellee. In connection with the verdict, the jury answered a number of interrogatories. Appellant moved for a judgment in its favor upon the answers to interrogatories. The motion was by the court overruled, and, over appellant's motion for a new trial, judgment was rendered on the verdict.

The errors assigned and relied upon for reversal are the overruling of appellant's motions for judgment upon the answers to the interrogatories, notwithstanding the general

verdict, and for a new trial. Our conclusion renders it necessary to consider only the latter.

The ninth specification for a new trial relates to the correctness of the ruling of the trial court in excluding the testimony of the witness, Doctor Perkhiser, with reference to a conversation sought to be proved between himself and plaintiff, as to the manner in which plaintiff's injuries were received. The offer to prove shows that witness would have testified that plaintiff told him, after the accident, that he heard the train coming, but thought he had time to cross the track. This testimony was clearly relevant and the questions asked tended to develop competent matter, and if erroneously excluded, was reversible error. "At common law, confidential communications made by a patient to a physician were not privileged. The common law in this State has been changed by statute." *Springer* v. *Byram* (1894), 137 Ind. 15, 23 L. R. A. 244, 45 Am. St. 159. And see §520 Burns 1908, §497 R. S. 1881.

It is urged by appellee that the relation of physician and patient existed between the witness and appellee, and that the testimony was therefore privileged. The evidence discloses that the witness was a surgeon of the railway company at that time; that he told appellee that he was requested by the station agent to visit him, and make an examination, so that he could make the ordinary report, as surgeons are required to make to the company, in cases of that kind; that he was there for the purpose of making an examination as the physician of the railway company, so that he could make his report to the railway company, and that he did make an examination as such physician of said company, but that he did not prescribe for appellee, and had nothing to do with the case as to treatment. It is evident that his visit was purely on a business matter, and not in a professional capacity, and that appellee so understood the purpose of his call. "When a third person em-

ploys a physician to examine a person for the purpose of acquiring information for the use of such third person, the relation does not exist between the physician and the person examined'' which makes the information obtained by the physician confidential.  10 Ency. Ev. 112.

In the case of *Battis* v. *Chicago, etc., R. Co.* (1904), 124 Iowa 623, 100 N. W. 543, in a personal injury case, the court said: ''It may be conceded that the sole purpose of the agent in calling the physician was that the latter might ascertain the condition of plaintiff, and thus be prepared to advise the company, should occasion therefor arise, or be a witness in its behalf, if necessary.  Certainly, if the visit of the physician had been confined to the limits incident to such purpose alone, his eligibility as a witness on behalf of the company might not be open to question.  Without doubt, a railway company, with the utmost propriety, may thus advise itself of the fact of an injury, and the character and extent thereof, in anticipation of a possible claim against it for damages.  And with that end in view, it may send a physician to inspect and take notes, or otherwise inform himself of existing conditions.  But this can avail the company nothing unless the physician shall strictly retain his character as an employe of the company.  If, upon request, or upon his own motion, he assumes to advise or administer treatment to the patient, and the latter in any manner acquiesces therein, the physician thereby casts aside his relation as an employe of the company, and transfers his allegiance to the patient.  In such instances, a case is presented where one cannot serve two masters at one and the same time.  The allegiance of the physician must be wholly upon one side or the other.  It matters not, in this connection, who calls him in the first instance, or who pays him.  He may present himself at the side of the patient on his own motion, and he may not expect, or in fact receive, pay.  The reason for this is apparent upon a moment's reflection.  If the physician assumes to advise or treat, he should be put in

possession of all facts necessary or material to enable him to do so properly. If the patient acquiesce, he should have the right to and should communicate freely and fully without fear of exposure or of having his confidence made common property. It was to this end that the statute was enacted, and manifestly the purpose thereof may not be frustrated by proof that, at the time of rendering professional service, the physician was under contract of employment to serve the interest of the person or company subsequently charged with responsibility for the identical injury he is called upon or assumes to treat."

In the case of *Heath* v. *Broadway, etc., R. Co.* (1890), 8 N. Y. Supp. 863, a physician of a railway company visited and examined a person injured by the alleged negligence of the company. On seeing this person, he stated to her that he came to see her on behalf of the company, and about her injuries. It was held that the statement made to him by the injured person was not privileged.

In the State of New York there is a statute in force very similar to our own, and in the case of *Griffiths* v. *Metropolitan St. R. Co.* (1902), 171 N. Y. 106, 63 N. E. 808, the Supreme Court of that state has laid down the rule as follows: "To bring the evidence of a physician within the prohibition of the code section above quoted, three elements must coincide: (1) The relation of physician and patient must exist; (2) the information must be acquired while attending the patient; (3) the information must be necessary to enable the physician to act in that capacity." There is nothing disclosed by the record in the case at bar that either of these requisites was established. It is true that the witness called to see appellee, with the attending physician, not long after he was injured, not, however, in the capacity of a physician. He did not prescribe for him, or in any manner assist in his treatment. On the contrary, however, it appears that appellee was in charge of another physician, who was called to treat him at the time of his injury, and

who continued to look after his welfare from that time to the time of his recovery. It appears that this occasion was the first time the witness visited appellee, and it also appears that he then informed him of the object of his visit, which was to carry out a duty which he owed to appellant company, by whom he was employed, to obtain the information as to the extent of his injury, how it was received, and make a report to his company of the result of his investigation; that he did not see appellee alone, but it was at a time when other persons were present, and the conversation took place in the presence of such other persons, who were competent to testify with reference to any conversation which occurred in the room where the physician, whose evidence was sought to be obtained, and the injured party were.

It is a well-established rule that the burden of showing that the evidence sought to be excluded under the statute is within the prohibition of such statute rests upon 4. the party who is seeking to exclude it. *People* v. *Koerner* (1897), 154 N. Y. 355, 48 N. E. 730; *People* v. *Schuyler* (1887), 106 N. Y. 298, 12 N. E. 783.

In the well-considered case of *People* v. *Koerner, supra,* the rule is announced as follows: "Where the testimony of the physician is sought to be excluded under the section of the code, the burden is upon the party seeking to exclude it to bring the case within its provisions. He must make it appear * * * that the information which he seeks to exclude was acquired by the witness while attending the patient in a professional capacity."

Appellee cites in support of his contention 1 Elliott, Evidence §634: "Where a physician, who is employed by the person responsible for an injury, visits the injured one, and it is fully understood by the latter that the visit is for the purpose of securing evidence as to the cause or extent of the injury, and the like, such communications made by the injured one to the physician are not privileged. But it has

been held that where a physician was sent to make an examination of a passenger, injured by a street railway company, it will be presumed that the relation of physician and patient existed, and that the information obtained was for the purpose of enabling the physician to treat the patient.'' Citing the case of *Munz* v. *Salt Lake City R. Co.* (1902), 25 Utah 220, 70 Pac. 852.

It will be seen that if it is understood by the injured one that the purpose of the doctor's visit is to secure evidence as to the cause or extent of the injury, and not for the

3. purpose of treatment, a communication made by the injured one to the physician is not privileged. This is not in conflict with the proposition announced in the case under consideration; to the contrary, we are fully supported by the doctrine as stated by Judge Elliott. The statute relied upon by appellee does not disqualify the physician from testifying except as to matters occurring between the patient and physician while that relation existed; and if such relation never existed, there is no disqualification.

The case of *Munz* v. *Salt Lake City R. Co., supra,* may be distinguished from the case at bar. In that case, the plaintiff was sent to the physician who made the examination of the injured party, so as to enable him to prescribe, if necessary, thus creating the relation of physician and patient. In the case before us, it affirmatively appears that the relation of physician and patient did not exist between the witness and the plaintiff at the time the statement in controversy was made, and the witness should have been permitted to testify.

Other assigned errors are discussed, but may not arise in another trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.