BAKER ET AL. *v.* WHITTAKER ET AL.

[No. 19,294. Filed May 14, 1962.]

*Victor S. Pfau, Wendel B. Iddings* and *John F. Mc-Cann, Jr.,* of Indianapolis, for appellants.

*Russell I. Richardson, Roland Griffin,* and *Steward & Richardson,* of counsel, all of Lebanon, for appellees.

BIERLY, J.—This is an action to set aside and cancel a deed to real estate brought by the sole heirs and devisees of the deceased grantor, Anna Stotler, and the legal representative of said heirs and devisees, the appellants herein, against the appellees, Basil Whittaker and Madge Whittaker, the grantees in said deed.

The issues were formed by appellants' complaint which alleged that the appellees unduly influenced the deceased grantor to convey real estate to the appellees, and the appellees' answer thereto denying plaintiffs' allegations of undue influence.

According to the evidence, on July 6, 1957, just twenty-two (22) days prior to her death, which occurred on July 28, 1957, Anna Stotler deeded to appellees her twenty acre farm. By the terms incorporated in said deed, the grantor, Anna Stotler, retained the right to live in the house on said farm during the remainder of her life. At the time of the conveyance, the grantor was 86 years old, and her life expectancy was 2.47 years. Further provisions in said deed obligated appellees to pay $500.00 on the first day of December of each year to the grantor as long as she may live or until the sum of $5,000.00 was paid to her, which ever occurred first. Said deed further provided that appellees were to pay the funeral expenses at the death of grantor.

The appellees and the grantor, Anna Stotler, were no blood relation. For a period of ten years prior to the conveyance, appellee, Basil Whittaker, had farmed the grantor's land.

On July 4, 1957, Anna Stotler offered to sell her said farm to the appellees. Basil Whittaker stated that

he did not have the money to buy at that time. Mrs. Stotler insisted Basil Whittaker go and bring his wife. After having done so, the grantor, Anna Stotler, on July 6, 1957, in the presence of witnesses executed the deed containing the provisions heretofore stated, conveying her real estate to appellees.

Trial was had without the intervention of a jury, and the court stated his findings and rendered judgment consistent therewith.

Appellants moved the court for a new trial therein urging:

"1. That the decision of the Court is contrary to law.

"2. Errors of law occurring at the trial as follows:

(a) The Court erred in overruling the objections of the Plaintiffs to the competency of Dr. John L. Reck, a physician, called on behalf of the Defendants to testify as to his observations and conversations with Anna Stotler, Deceased, . . .

(b) That the Court further erred in overruling the objection of the appellants to questions propounded by the appellees during the cross examination of Basil Whittaker, a witness called on behalf of the appellants, and admitting answer thereto in evidence, . . .

(c) And, further the Court erred in overruling the objection of the appellants to appellees' question propounded by appellees during the direct examination of Madge Whittaker, a witness called on behalf of appellees, and in admitting the answer thereto in evidence."

The court overruled appellants' motion for a new trial. Appellants in this appeal set forth the following assigned error:

"The Court erred in overruling appellants' motion for a new trial."

It is alleged by appellants in their complaint that on the date the deed in question was executed and for more than six months prior thereto, Anna Stotler, a person of more than 84 years of age was enfeebled both in body and in mind, and by reason thereof, was easily susceptible to the influences, acts and persuasions of others; "that during said period of time, the Defendants well knowing her weak and enfeebled condition as aforesaid, and corruptly contriving and intending thereby to defraud said Anna Stotler out of her said real estate, made frequent visits to her and by means of continuous, persistent and undue persuasion and importunity and undue, corrupt and overpowering influence exercised by Defendants over and upon said Anna Stotler, so wrought upon the minds and inclinations of said Anna Stotler, that on said day said Defendants procured from said Anna Stotler a deed conveying said real estate to the Defendants."

Appellants argue that the evidence presented clearly established a presumption of fraud and undue influence. Further, they contend that the evidence establishes that Anna Stotler was senile and was suffering from arteriosclerosis and hypertension; that she lived alone on her farm; that she had little or no formal education and that she was mentally subnormal. Appellants further contend that Basil Whittaker managed the Stotler farm; that on July 4, 1957, at a meeting in her home with Basil Whittaker, Anna Stotler offered to sell her farm to him. No witnesses were present at this time; that Basil Whittaker demurred and Mrs. Stotler requested him to go and bring his wife to her home. This Whittaker did. Contact was made by Whittaker with William Bennett, Woodrow Bennett, his attorney Roland Griffin, and Mrs. Stotler's physician, Dr. John R. Reck.

All of the above named gathered at the Stotler home on July 6, 1957, and at that time the deed was executed.

It is contended by the appellants that William Bennett, and his son, Woodrow Bennett, were close friends of the appellees; that Roland Griffin was appellees' attorney; that Dr. Reck examined Anna Stotler at her request but left prior to the execution of the deed. Appellants contend that the evidence discloses that Anna Stotler signed the deed as drawn by Attorney Griffin and without alteration; and that the said Griffin had neither talked to nor consulted with her as to what the deed was to contain.

One of the major contentions raised by appellants, to which we first give our attention, is whether the trial court erred in allowing Dr. Reck to testify as to certain matters which appellants argue were privileged communications between a physician and a patient. Anna Stotler, after deciding that she wished to sell her farm, asked that Dr. Reck, her physician, be called to examine her. The physician did not call at her home to administer treatment, but rather he was called in because Anna Stotler desired his opinion as to her competency to execute a deed. Testimony by the doctor was to the effect that other persons were present when he arrived at the Stotler home. He further testified that his conversation with Mrs. Stotler was purely to determine and establish her physical and mental ability to competently execute a deed.

Generally speaking, communications had between physician and patient, which are of a confidential nature, are privileged and inadmissible in evidence. §2-1714, Burns' Ind. Stat., 1946 Replacement.

There was evidence to the effect that Dr. Reck was not only Anna Stotler's physician but also her friend

and adviser. Evidence was submitted that Dr. Reck had treated Mrs. Stotler on numerous ocasions for various ailments. The question here arises as to whether he was acting as a physician in his professional capacity when he advised her as to her competency to execute the deed in question. It was at Anna Stotler's request that the physician came to her home. It appears from the evidence that Mrs. Stotler had asked the professional opinion of her physician and he complied. It has been held that if a physician at the request of his patient submits professional advice or administers treatment to the patient, thence the confidential relationship of physician and patient exists. *Chicago, etc. R. Co.* v. *Gorman* (1911), 47 Ind. App. 432, 94 N. E. 730. The fact that the physician-patient relationship exists does not work as an absolute bar to the competency of the physician to testify on certain matters which arise from that relationship. The physician's incompetency may be waived, either expressly or on implication by the patient herself. *Metropolitan Life Ins. Co.* v. *Willis* (1906), 37 Ind. App. 48, 76 N. E. 560. This privilege extends only to those things which are of a confidential nature. Therefore a physician may testify as to matters which do not involve a breach of professional confidence. *Seifert* v. *State* (1903), 160 Ind. 464, 67 N. E. 100.

The advice Dr. Reck gave Anna Stotler was not entirely clinical in nature. He not only gave her advice as to her physical and mental condition, but also gave her his opinion as to her legal competency to convey her land in the manner she desired. It appears that the matters discussed between them were not of a confidential character. By

her actions in the presence of third persons, Anna Stotler expressly and explicity intended to remove any doubts which might be cast upon the transaction with respect to its legality. The evidence supports the position that Anna Stotler's purpose in calling in Dr. Reck was intended by her to demonstrate to all persons involved that she was sufficiently possessed of her mental faculties to understand the legal consequences of her action. Therefore, it appears that the testimony in question was not confidential and did not come within the provisions of §2-1714, Bruns', *supra*. The advice sought from the physician appears to have been as that of a trusted friend of long standing. The privilege of confidential relationship, if any, it appears was waived by Anna Stotler herself. Thus it was not error to allow the doctor to testify to what was said or done on the day in question.

The evidence most favorable to appellees shows that though Anna Stotler was eighty-four years of age and had for some time suffered from hypertension and arteriosclerosis, her general nervous reactions were about normal, her ideas and judgment were good, her conversations were coherent, she appeared able to concentrate and was rational at all times.

Dr. Reck testified that regardless of the physical infirmities which usually accompany old age, Anna Stotler was, in his opinion, in a mental and physical condition to transact business. There was also evidence that Mr. Bennett and his son, Woodrow, although they were closer acquanitances of the appellees than with Anna Stotler, were invited to be present and witness the agreement and to note concerning what was being said and done with respect to the sale of real estate by Anna Stotler to the appellees.

A person is not incapacitated to execute a deed merely because of advanced years or by reason of any physical infirmities. *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997.

In order to warrant the setting aside of a conveyance because it was procured by fraud or undue influence, it must be established or shown that fraud was directly connected with the execution of the instrument. 26 C. J. S. *Deeds,* §56; that in an action to set aside a deed on the allegations of its procurement by fraud, an adverse party must show

"a misrepresentation concerning a meterial fact and not merely the expression of a matter of opinion or representation concerning matters equally within the knowledge of both parties." West, I. L. E. Vol. 10, §83, p. 158; *Jagers* v. *Jagers* (1875), 49 Ind. 428.

We quote West, I. L. E., Vol. 10, §86, p. 161, as to the definition of undue influence sufficient to invalidate a deed to be

"the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Folsom* v. *Buttolph* (1924), 82 Ind. App. 283, 143 N. E. 258, 262.

We think that from the evidence the court concluded that there was no imposition or undue influence exerted by appellees in acquiring said real estate from the grantor. The rule is well established in this state that if a grantor be of sound mind, as shown in the case at bar, when she executed the deed in question, she held a legal right to convey the land for any legal consideration, or as a

gift should she so desire. *Batman* v. *Snoddy* (1892), 132 Ind. 480, 32 N. E. 327. The evidence fails to disclose that Anna Stotler was in a condition of "great mental weakness," but instead the evidence clearly shows she was in a remarkably good condition for a person of that age.

Appellants contend that there existed between the appellees and the deceased grantor, a relationship of trust or confidence, and that when the party occupying the superior position has dealt with the other in such a manner as to obtain a substantial advantage, the law will presume that an improper influence was exerted, and that the transaction was fraudulent. Citing *Westphal* v. *Heckman* (1916), 185 Ind. 88, 113 N. E. 299; *Scott* v. *Brown* (1927), 90 Ind. App. 367, 157 N. E. 64. While the rule seems accurately stated, it must be carefully applied to the facts presented to the trial court. Whether or not a relationship of trust and confidence existed between the parties to the transaction is a question of fact for the trial court to determine. The burden rested upon appellants to show the existence of a dominant or superior position of the appellees over Anna Stotler. *Hutchens, Admr.* v. *Hutchens* (1950), 120 Ind. App. 192, 201, 91 N. E. 2d 182. We have examined the record closely and do not find that appellants established such superior position of appellees by undisputed evidence. Who held the dominant position in the instant case was, under the evidence, a question of the trier of the facts. Basil Whittaker also suffered from a physical handicap in that he was a cripple. It appears that he did not seek to buy the farm but, instead, that he was importuned by Anna Stotler to purchase the farm after an attractive offer had been presented to him. This was done even after Whittaker

had informed the grantor of his financial inability to buy the farm.

Why Anna Stotler made the particular transaction in question can only be inferred from the evidence itself. The evidence most favorable to appellees supports the position that the relationship of the Whittakers and Anna Stotler was not basically simply one of tenant or sharecropper with a landlady but, rather, that through the years a relationship of neighbors and friends developed. Evidence was further to the effect that the Whittakers had looked after Anna Stotler and had performed some kindly acts in her behalf. It was further developed by the evidence that Anna Stotler was concerned about her future security because of advancing age, her health, and the lack of confidence and trust in her blood relationship. The evidence fully warranted the inference by the court that by the terms of the transaction, Anna Stotler attempted to provide security for herself by retaining her home during her natural life and further by requiring that the purchasers of the farm, the appellees, be obligated to pay her funeral expenses.

The evidence further indicates that the transaction was openly conducted and agreed to. It thus appears that the evidence supports the position that Anna Stotler exercised her free and voluntary choice in executing the deed in question. *Schrenker, Executor, etc.* v. *Grimshaw et al.* (1954), 124 Ind. App. 493, 119 N. E. 2d 432. The fact that Anna Stotler had certain witnesses called in to be observers to the transaction; that she called in Dr. Reck to support her position that she was mentally capable of exercising her free and voluntary choice, and that she took every precaution to see that the entire transaction was legal and binding, all warrant the inference

that the decedent acted freely, voluntarily, and with complete mental freedom in the entire transaction of deed execution.

Appellants contend that the consideration in the sale of the real estate was inadequate and that this inadequacy raises the presumption that the deed was procured through fraud and undue influence. Since at the time of the conveyance, the life expectancy of the grantor was only 2.47 years, appellants urge that appellees would have been required to make only two $500.00 payments for the farm which was worth at least $6,000.00. We are unimpressed with this argument. The terms of the agreement did not state that the appellees would be required to make only two pyaments of $500.00 each, but instead clearly states that appellees were to pay $500.00 each year to Anna Stotler until she had received $5000.00 or until her death, should that occur prior to the payment in full of said sum of $5,000.00. There was no certainty that Anna Stotler would not live longer than 2.47 years and it was possible that she could have lived long beyond the ten years time that full payment would have been made on the purchase price.

Approximately twenty-seven months prior to the death of Anna Stotler, she executed a last will and testament which was probated upon her death, therein providing a life estate to her daughter in real estate owned by her in Boone County, with the remainder vested in her grandchildren, the children of her daughter. The evidence shows that said daughter of Anna Stotler was living in a nursing home and was under a guardianship. It appears from the evidence that Anna Stotler did not fully trust all of her grandchildren. We are not required to establish

a motive prompting the conveyance of the real estate to appellees. We can only determine whether there was some evidence to support the judgment reached by the trial court. The finding of the trial court in the instant case is fully supported by inferences and by the conclusions it reached from observation and the hearing of the testimony of the witnesses. Charges of fraud and undue influence, especially where elderly people are involved, in connection with the execution by them of deeds and wills, are always matters of great concern. Such transactions are rightly carefully scrutinized. However, this court is not in a position to hold as a matter of law that every will and deed by an elderly person who may be suffering from common ailments of old age was obtained by fraud or undue influence.

All evidence favorable to appellees must be considered and when it appears that Anna Stotler voluntarily exercised a right of free choice without the intervention of fraud or undue influence, this court must sustain the judgment rendered by the trial court.

Aged persons have the same right as other persons to legally dispose of their property in any legitimate manner they so desire. Unnecessary restraints should not be placed upon such elderly citizens in reference to their legal transactions, nor should unwarranted interference be countenanced.

We are of the opinion that appellants failed to present valid grounds for reversible error, and that the decision of the court was contrary to law.

We conclude the decision of the trial court is not contrary to law. Judgment affirmed.

Kelley, P. J., Pfaff and Gonas, JJ., concur.

NOTE.—Reported in 182 N E. 2d 442.