David J. CANFIELD, Jr., Appellant,

v.

Melvin H. SANDOCK and Betty J. Sandock, Appellee.

No. 71S03–9011–CV–745.

Supreme Court of Indiana.

Nov. 27, 1990.

Rehearing Denied Feb. 11, 1991.

Robert J. Palmer, Arthur A. May, May, Oberfell & Lorber, South Bend, for appellant.

Robert F. Gonderman, Sr., Gonderman Law Offices, P.C., South Bend, for appellee.

DeBRULER, Justice.

This cause had its origin in an automobile-pedestrian accident which resulted in personal injury to the pedestrian, Melvin Sandock. Sandock filed a suit for damages against David J. Canfield, the driver of the car, alleging "temporary and permanent physical injury, temporary and permanent pain and suffering, mental suffering, medical expenses and economic loss." The complaint also alleged that Sandock's wife suffered a loss of consortium.

By way of interrogatories, Canfield requested the following medical information: 1) the names, addresses, and appointment dates of "each doctor who [had] examined, treated, or diagnosed any of the injuries [Sandock] allegedly suffered or sustained as a result of the accident of October 23, 1986," and 2) whether Sandock had been examined, treated or diagnosed by any doctor for any cause from the date of the accident to the date of the interrogatory and the names, addresses, and appointment dates of those treating physicians. In answer to the first request, Sandock identified five doctors whom he had consulted regarding his accident-related injuries, and he gave the name of his cardiologist in response to the second. Pursuant to Ind. Trial Rule 34(C), Canfield then served on all six doctors a request for production of documents and a subpoena duces tecum which requested

> [a] copy of each and every document contained within your file pertaining to plaintiff Melvin H. Sandock.... This request includes, but is not limited to, copies of any and all physician's notes, nurse's notes, clinical reports, hospital reports, laboratory reports, questionnaires completed by the patient, and any other document contained within your file.

Trial Rule 34(C) requires that production requests made on nonparties be served on parties, and Canfield complied with this part of the rule by forwarding a copy of each request to Sandock's attorney.

Sandock then filed a motion to quash the subpoenas and for a protective order to prevent the production of all documents requested from all six doctors, asserting that some of the requested material fell within the physician-patient privilege and

was therefore not subject to discovery. The trial court granted the protective order, quashed the subpoenas, and awarded attorneys' fees to Sandock's counsel as a sanction. Subsequently, the trial court granted Canfield's Request for Certification and Sandock's request for appellate attorneys' fees, reserving the ruling on the amount. Canfield's appeal was addressed in *Canfield v. Sandock* (1988), Ind.App., 521 N.E.2d 704,[1] where the Court of Appeals ruled that the trial court abused its discretion in precluding Canfield's discovery of Sandock's medical records and in awarding attorneys' fees. Sandock then filed a petition for transfer to this Court. The petition is granted, and the decision of the Court of Appeals is vacated.

■ The instant case sets before this Court the important task of delineating the respective boundaries of the physician-patient privilege and the scope of discovery where the two are in conflict. Our discovery rules are designed to allow a liberal discovery procedure, the purposes of which are to provide parties with information essential to the litigation of all relevant issues, to eliminate surprise and to promote settlement, with a minimum of court involvement in the process. *Chustak v. Northern Ind. Pub. Serv. Co.* (1972), 259 Ind. 390, 288 N.E.2d 149; *Crider v. State Exch. Bank* (1986), Ind.App., 487 N.E.2d 1345. Ind. Trial Rule 26(B)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Trial Rule 34(C) states that "[a] witness or person other than a party may be requested to produce ... the matters [discoverable from another party]." These two rules, read in conjunction, provided the avenue by which Canfield attempted to discover from the nonparty doctors medical information relevant for the preparation of his defense at trial.

■ Sandock sought to resist the discovery of this information by invoking the physician-patient privilege. This privilege did not exist at common law, but was statutorily created "for the purpose of extending to the relation between a patient and his physician the same rule of public policy by means of which the common law protected the professional confidence necessarily existing between a client and his attorney." *Masonic Mut. Benefit Ass'n v. Beck* (1881), 77 Ind. 203, 210. The keeping of professional confidences existing between an attorney and client is enforced by two mechanisms, I.C. 34–1–14–5, which renders attorneys incompetent to testify, and Ind. Professional Conduct Rule 1.6, which forbids attorneys to "reveal information relating to representation of a client unless the client consents after consultation." The rationale underlying the attorney-client privilege, which was recognized at common law, and scope of the enforcement mechanisms have been explained by this Court as follows:

> A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is hereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.
>
> The principle of confidentiality is given effect in two related bodies of law, attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness *or otherwise required to produce evidence concerning a client.* The rule of client-lawyer confidentiality applies in situations other

---

1. In accordance with Ind. Appellate Rule 4(B)(6)(c), the cause proceeded to trial on the merits during the pendency of the appeal of these rulings by the trial court. The jury found in favor of Sandock and made a sizable damage award. Canfield's appeal of that judgment is currently pending in this Court.

than those where evidence is sought from the lawyer through compulsion of law.

Prof.Cond.R. 1.6 comment (emphasis added). The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself.

■ By creating the physician-patient privilege, which is codified in the same statute as the attorney-client privilege, I.C. 34–1–14–5, the legislature statutorily recognized the societal value of protecting the confidences existing within that professional relationship, and this Court interpreted this legislative act as affording as much protection to physician-patient confidences as is provided to attorney-client confidences because of the marked similarity of interests being protected. *Beck*, 77 Ind. 203. We explained in *Collins v. Bair* (1971), 256 Ind. 230, 268 N.E.2d 95, that the physician-patient privilege

> has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

*Id.* at 236, 268 N.E.2d at 98. As is the case with the attorney-client privilege, the keeping of confidences existing within the physician-patient relationship is enforced in judicial proceedings by the rules of evidence, which preclude compelled testimony or production of evidence, and by the ethical rules of the medical profession, which prohibit disclosure of confidential information in non-judicial settings.[2]

■ The privilege statute has not been construed as erecting an absolute bar to disclosure of confidences, but rather as creating a privilege held by the patient which only he, or his heirs or personal representative after his death, may waive. *Stayner v. Nye* (1949), 227 Ind. 231, 85 N.E.2d 496. Under Indiana law, the patient may waive the privilege either expressly or by implication. In *Collins*, 256 Ind. 230, 268 N.E.2d 95, this Court held that when a patient who is a party to a lawsuit places his mental or physical condition in issue, he has done an act which is so incompatible with an invocation of the physician-patient privilege as to that condition that he has impliedly waived the privilege to that extent.

■ Canfield asserts that when Sandock waived the physician-patient privilege by filing this lawsuit, all information concerning his health and medical history then became subject to discovery. Although Canfield is correct that, under *Collins*, Sandock did impliedly waive the privilege, he is incorrect in his assertion as to the extent of that waiver. *Collins* does not provide support for Canfield's proposition that when one files a suit, or otherwise places a physical or mental condition in issue, he opens up his entire medical record, past and present, for pre-trial examination by opposing party and counsel and, potentially, for exposure to the world at large in the forum of trial. Rather, *Collins* expressly and specifically held that,

> [l]est the physician-patient privilege become nothing more than a legal anachronism, it would seem apparent that the privilege is waived only to those matters causally and historically related to the condition put in issue and which have a direct medical relevance to the claim, counterclaim or defense made.

2. The Hippocratic Oath imposes on physicians a duty to maintain confidences acquired in their professional capacity, as do the Oath of Attorneys and the Rules of Professional Conduct on attorneys. The boards governing the various areas of medical speciality police and enforce medical ethics just as our Disciplinary Commission ensures adherance to or sanctions deviations from legal ethics.

*Id.* at 242, 268 N.E.2d at 101 (emphasis omitted). In other words, medical information which is unrelated to the condition in issue and irrelevant to the cause remains privileged and therefore protected from discovery.

The following hypothetical is illustrative: A complaint for damages alleges that the plaintiff suffered a broken arm as a result of the defendant's negligence. Discovery requests propounded by the defendant reveal that, in seeking treatment for the condition put in issue by the suit, the plaintiff consulted the family's physician, who has attended the plaintiff for a number of years and for a number of ailments, and an orthopedic surgeon, who treated only the broken arm. Pursuant to T.R. 34(C), motions to produce plaintiff's medical records and subpoenas duces tecum are then sent to both doctors. Under Canfield's interpretation of *Collins*, all of the files maintained by both doctors would be fully discoverable, without exception or limitation. This is untenable. It is possible that the information contained in the doctors' files is relevant to the cause or is irrelevant but innocuous. It is equally possible that the information contained in the documents, whether accumulated over years of treatment by the family physician or noted in the general medical history which most doctors take from new patients before beginning a specific course of treatment, could reveal a past or current medical condition which is totally unrelated to the condition in issue and the revelation of which would strike at the heart of the physician-patient privilege.

Full and unlimited disclosure of the subpoenaed medical records could reveal, for example, that the plaintiff had been tested for or diagnosed as having AIDS or some other sexually transmitted disease or that a female plaintiff had undergone an abortion procedure. Clearly, none of this information has the slightest causal or historical connection to the condition in issue nor any possible relevance to the trial of this cause. It would not be admissible at trial, nor could it be characterized as "reasonably calculated to lead to the discovery of admissible evidence." A construction of the

rules governing the discovery process which would authorize the disclosure of unrelated and potentially embarrassing or ruinous information could only undermine the purpose of the physician-patient privilege. Patients would be unwilling to discuss their problems with their physicians candidly for fear that this sort of intensely private information could be subject to revelation should they ever be party to a lawsuit where some unrelated aspect of their health is in issue.

The foregoing is, of course, drawn with broad strokes to make for an easy illustration of the point, and this Court acknowledges that most cases will not lend themselves to such simple resolution. However, the trial court is vested with wide discretion to control the discovery process, and the *Collins* Court provided the framework by which it is to manage the discovery process where, as here, part of a discovery request is permissible because some of the requested material pertains to the condition in issue and is therefore subject to discovery because the privilege has been waived, but part of the request is impermissible because some of the requested material is unrelated to the condition in issue and therefore remains privileged and beyond the scope of discovery:

[If the party-patient] considers the inquiry a mere "fishing expedition" into matters unrelated either causally or historically and therefore irrelevant to the condition he has put in issue, he may seek a protective order from the court pursuant to Trial Rule 26(C). Responsibility would then devolve upon the trial court, in an exercise of its sound judicial discretion, to determine the extent, if at all, that discovery is to be had.... If it be shown that there is nothing more than some casual link having no direct medical bearing on the legitimacy of the claim or defense tendered between the condition in issue and the condition on which discovery is sought, the trial court should properly issue a protective order ... [such that] the confidential relationship of physician-patient is preserved in all respects except in those areas where the

party, by his very conduct, has disclosed information which itself limitedly removes the veil of privacy.

*Id.* at 242, 268 N.E.2d at 101.

■ Once a privilege has been invoked, the burden is upon the party claiming it to prove his entitlement to its protection. *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (Fifth Amendment privilege against self-incrimination); *State ex rel. Pollard v. Criminal Court* (1975), 263 Ind. 236, 329 N.E.2d 573 (same); *Colman v. Heidenreich* (1978), 269 Ind. 419, 381 N.E.2d 866 (attorney-client privilege); *Chicago, I. & L. Ry. Co. v. Gorman* (1911), 47 Ind.App. 432, 94 N.E. 730 (physician-patient privilege). In the context of the Fifth Amendment privilege against self-incrimination, the United States Supreme Court has stated:

The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if it clearly appears to the [trial] court that he is mistaken.

*Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818, 95 L.Ed. at 1124. Likewise, in the context of the physician-patient privilege, the bare assertion of a claim of privilege will not suffice to block discovery of the information sought by the discovery request. Rather, the trial court must review the contested materials and determine whether the claim of privilege is justified or mistaken and whether production of the requested documents should be barred or compelled.

■ The defendant in *Newton v. Yates* (1976), 170 Ind.App. 486, 353 N.E.2d 485, sought to resist a T.R. 26(C) request for production of documents by asserting that the material requested was work-product material and was therefore immune from discovery under the attorney-client privilege. The trial court ordered that the contested documents be turned over for an in camera inspection and determined that most of the documents were not discoverable. The Court of Appeals affirmed the trial court's rulings on this issue, with one exception,[3] and stated that when ruling on whether to require the production of documents, a trial court must make an initial

determination of relevancy to the issues being tried; ... secondly, if that test is met, it must next be determined if the information is protected from discovery by a privilege or immunity.... While an *in camera* inspection by a court on a discovery question is not unknown, it is at least rare. It is a discretionary act requiring the trial court to expend a great amount of time and energy.

*Id.* at 493–94, 353 N.E.2d at 490. Such a procedure should remain rare. The expectation of all parties should be that, as discussed in the hypothetical, requested documents are either relevant and discoverable or irrelevant but innocuous such that no harm will result from disclosure, that discovery will proceed without the court's participation, and that invocation of the privilege will be reserved to protect from discovery information about only those conditions of the most intimate nature. Trial courts retain the authority provided by T.R. 26(C) and T.R. 37(A)(4) to sanction the waste of judicial resources exhausted in evaluating what turn out to be meritless assertions of the privilege.

■ The hearing at which arguments on Sandock's motions were heard by the trial court was not transcribed. Pursuant to Ind. Appellate Rule 7.2(A)(3)(c), however, the trial court prepared and filed a certified statement of the proceedings which reflects the arguments and objections made at the hearing. Our review of this record shows that the trial court acted within its discretion in granting Sandock's motion to quash the subpoenas duces tecum and for a protective order and in awarding attorneys' fees.

The decision of the Court of Appeals is vacated. The rulings of the trial court are affirmed, and this cause is remanded to the

---

**3.** The trial court erroneously barred the discovery of estimates of damage and cost of repairs, which the Court of Appeals found not to be privileged as attorney work-product.

trial court for a determination of the amount of the award of appellate attorneys' fees.

SHEPARD, C.J., and GIVAN, J., concur.

DICKSON, J., concurs and dissents with separate opinion.

PIVARNIK, J., dissents.

I dissent. I would deny transfer or grant transfer and affirm the Court of Appeals.

DICKSON, Justice, concurring and dissenting.

I concur with the majority except as to its affirmance of the trial court's order that Canfield pay attorney's fees to the Sandocks' counsel as a sanction in the underlying discovery dispute.

In the use of non-party requests for production directed to the Sandocks' treating physicians pursuant to Ind. Trial Rule 34(C), Canfield's methods were consistent with prevailing practice and substantially justified. *See, e.g.,* T. Yoder, *Integration of Trial Preparation and Discovery: The Defendant's Viewpoint,* in *Trial Preparation and Discovery: Controlling Time and Costs* at II–4, Indiana Continuing Legal Education Forum (1982); J. Petersen, *Processing the Routine Negligence Case from Receipt to Settlement,* in *Strategies for Representing the Routine Negligence Case* at II–59 and II–70, Indiana Continuing Legal Education Forum (1984); G. Montgomery, *Paper Discovery of Medical Records and Their Effective Use at Trial,* in *Winning Your Case Through Effective Pre-trial Discovery* at 8–12, 35–40, Indiana Continuing Legal Education Forum (1990).

That Canfield's discovery attempt was not abusive is evidenced in the proceedings below. While granting the Sandocks' motion for protective order, the trial court expressed its belief that the issue presented a question of first impression under Indiana law, thus admitting that Canfield's conduct was not in contravention of existing rules or precedent. Significantly, the opinion of the Court of Appeals unanimously concluded that the trial court abused its discretion in granting the protective order and implicitly approved of Canfield's medical discovery technique.

It is only by reason of today's decision of this Court that Canfield's discovery method has been rendered too extensive—and then only because of the successful intervention of the Sandocks' motion for protective order. Canfield was certainly entitled to present legal argument in opposition to the motion for protective order, even if ultimately unsuccessful. Even under the procedures endorsed by the majority opinion, Canfield's non-party request for production requesting all prior medical records cannot be viewed as excessive since the burden is placed upon the plaintiff to assert his right to medical confidentiality by means of a protective order. The stated expectation of the majority is that documents will likely be requested which are "irrelevant but innocuous" and that invocation of the privilege of confidentiality will be rare.

In view of the widespread acceptance and use of the discovery procedure utilized by Canfield, the trial court's implied concession that the established law was not adverse to Canfield's position, the unanimous approval of the procedure by the decision of the Court of Appeals, and the conformity with the procedure actually recommended by this Court today, Canfield's attempted discovery was substantially justified thereby precluding an award of expenses including attorney's fees under Ind. Trial Rules 26(C) and 37(A)(4). I would reverse the trial court's punitive imposition of attorney fees.