**In re the Marriage of Christine Ann OWEN, Respondent–Appellant,**

v.

**David Todd OWEN, Petitioner–Appellee.**

**No. 45A03–8904–CV–143.**

Court of Appeals of Indiana, Third District.

Feb. 8, 1990.

---

Robert G. Berger, David E. Mears, Highland, for respondent-appellant.

John R. Pera, Grego, Pera & Bishop, Martin H. Kinney, Merrillville, for petitioner-appellee.

GARRARD, Judge.

Christine Ann Owen appeals the decision of the Lake Circuit Court granting David

Todd Owen's petition to modify the order of custody of their two children. Christine presents two issues for our review:

(1) Whether the trial court violated Christine's procedural due process rights when it granted David temporary custody of the children at a hearing of which Christine had no notice and when it failed to hold a hearing on the evidence for almost nine months after the children were removed from her home.

(2) Whether the trial court's findings of fact support its conclusion that substantial changes in circumstances had occurred such that custody of the children should be modified.

We reverse.

### Facts and Procedural History

Christine and David Owen's marriage was dissolved on May 7, 1987. They are the parents of two daughters, Laura, born June 20, 1980, and Lisa, born August 18, 1984. Pursuant to the agreement of the parties, Christine was granted custody of the children. Even before their divorce, Christine had been hospitalized to undergo psychiatric treatment.

On April 23, 1988, Christine was admitted to Our Lady of Mercy Hospital in Dyer, Indiana, for treatment of a mental disorder. At the time, her mother, the children's grandmother, was living in her home and helping her to care for the children when she was working. On the day she was admitted, the children were at David's home for weekend visitation. On Monday, April 25, 1988, David filed a verified petition for an emergency custody order based upon the fact that Christine had been admitted to a hospital for an as yet unknown period of time for treatment of a mental disorder. Christine did not know of these proceedings, but David's attorney contacted Christine's attorney who appeared on her behalf, though he had not conferred with Christine. The court granted David temporary custody of the children subject to an immediate hearing when Christine was ready to appear.

Christine was discharged from the hospital on May 13. On May 26, she requested an immediate hearing, and hearing was granted for June 1. On May 27, David filed an amended petition for modification of custody. Hearing was held on June 1, and David had time only to present as evidence the testimony of Stana Michaels, who testified that it was her opinion that the children had been sexually abused. The hearing was adjourned, but based on Ms. Michael's testimony, the court continued temporary custody in David and restricted Christine's visitation. The hearing was continued until August 16. (Later in the proceedings, the trial court, on Christine's motion, ordered all parties evaluated by a court-appointed psychologist and struck the testimony of Ms. Michaels.)

On August 8, Christine moved for a continuance and the hearing was reset for September 29. On August 22, David moved to continue and hearing was reset for October 27. On August 26, Christine moved to have psychological evaluations performed. Trial was finally held on February 7 and 8, 1989. Christine had moved to have special findings of fact entered before any evidence was presented on June 1. On February 24, 1989, the court entered its special findings of fact and conclusions of law, and granted David custody of the children.

### I. Due Process

Christine argues that her right to due process was violated in two ways. First, the court granted David's petition for an emergency custody order without giving her notice and the opportunity to present evidence before the children were removed. Second, the trial court did not grant her request for an immediate hearing and did not conduct a hearing on the merits for eight months.

As to Christine's first contention, this is the first time in Indiana that granting of a petition for emergency temporary custody has been challenged on due process grounds. Temporary custody has, however, been recognized as a reasonable response to protect the children from irrep-

arable harm in an emergency. *Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310, 313; *Hayden v. Hite* (1982), Ind.App., 437 N.E.2d 133, 136. In an analogous situation a preliminary order suspending the father's support obligations was found not to violate the mother's right to due process where the order contemplated only a temporary interruption of support payments to be followed by proper notice and a full hearing. *Hayden v. Hite, supra*. We find the court's holding applies to the case at bar. The change in custody was temporary. Christine had been admitted to a hospital for an indefinite period of time. The law presumes that it is in the child's best interest to be placed in a parent's custody rather than in the custody of a grandparent. *Marriage of Steward* (1986), Ind.App., 507 N.E.2d 585, 587. David already had visitation rights. Therefore, the court did not abuse its discretion in granting David temporary custody.

Christine complains that she did not receive notice of the hearing and did not have the opportunity to present evidence on her behalf. The record bears this out.[1] At this stage in the proceedings, however, it was not certain when or if Christine would be able to appear in court. The court, therefore, ordered that temporary custody be placed in David until Christine was released and a further hearing could be held. The court recognized Christine's due process right and ensured that she would have the opportunity to be heard. The court, however, also recognized that emergency circumstances of indefinite duration kept Christine from appearing and placed the children in some danger. Given the circumstances, we cannot say that Christine's right to due process was violated. Moreover, her right to due process was preserved. To hold otherwise would discourage noncustodial parents from seeking temporary custody in court and encourage them to take matters into their own hands. David's seeking temporary custody through court order is the preferred and legal way.

■ While granting the temporary custody order did not violate due process, due process requires that an evidentiary hearing be scheduled as soon as possible and that Christine receive notice and a full hearing on the evidence before the original custody order is modified. *Brown v. Brown, supra; Marriage of Henderson* (1983), Ind.App., 453 N.E.2d 310, 313. We, therefore, turn to Christine's second contention, that she was denied due process because she was not given an immediate hearing. Christine was hospitalized on April 23, 1988, and on May 13 she was discharged. On May 26, she requested an immediate hearing, which was scheduled six days later on June 1. Under the circumstances we cannot say she was denied an immediate hearing.

■ The hearing on June 1 had become a hearing to modify the original custody order by virtue of David's petition to modify custody filed on May 27. At this hearing, there was time only for a psychologist to testify that she believed the children had been sexually molested by their mother. The hearing was continued, and the court ordered that temporary custody be continued in David. Christine does not contest David's retaining temporary custody; she does, however, argue that a delay of almost eight months until the hearing on the merits—held February 7 and 8, 1989—while David retained temporary custody, deprived her of due process. She cites *Brown v. Brown, supra*, for the proposition that a delay of two months before hearing prejudices the custodial parent and argues that the eight month delay has prejudiced her.

Custody proceedings are to receive priority in being set for hearing. IC 31–1–11.5–23. We are concerned that the June 1 hearing had to be continued to a date more than two months later. David points out that prior dates were available, but that both sides deemed the time available on those dates as insufficient; therefore, they

1. Christine's attorney had been notified and appeared on her behalf. We do not find this fact dispositive.

agreed to August 16, a day on which there was a sufficient block of time to have a full hearing. Moreover, Christine, on August 8, moved for a continuance, which the court granted. The hearing was reset for September 29. Further continuances were granted in part to allow time for a court-appointed psychologist to complete his evaluation, Christine's motion for a continuance on February 7, 1989 was denied. We find that in light of the continuances, some of which were granted at Christine's request, the two-month delay was harmless and the eventual delay of eight months was not error.

## II. Substantial Change in Circumstances.

■ Pursuant to Trial Rule 52, the trial court entered its special findings of fact and conclusions of law. The court concluded that there had been a substantial change in circumstances since May, 1987. This court is bound by these findings and may not set them or the judgment of the trial court aside unless they are clearly erroneous. TR 52(A). The function of this court in an appeal from a custody modification decree is to determine whether the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Isom v. Isom* (1989), Ind.App., 538 N.E.2d 261, 263. Custody may be modified only when the petitioner shows a decisive change in the conditions of the custodial home or a change in the treatment of the child which necessitates removal. *Id.* Even when the petitioner has demonstrated a change in circumstances, the changes must be of such magnitude that the existing custody order is unreasonable. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888; *Isom v. Isom, supra; Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310, 313. There does not have to be a change that compels a change of custody in and of itself. The change, if its effect on the child is to be properly assessed, must be judged in the context of the whole environment. It is the effect upon the child that renders the change substantial or inconsequential. *Poret v. Martin, supra.* If such a change has not occurred, the trial court has abused its discretion when it grants a modification. *Brown v. Brown, supra.*

■ David argues that the court correctly granted a modification because both children have been the victims of sexual abuse while in Christine's custody, and because Christine's hospitalization for mental illness demonstrates that she has become too unstable to care for her children. As to the allegations of sexual abuse, David is correct that sexual abuse is a substantial and continuing change in circumstances that renders the original custody decree unreasonable. However, according to the court's factual findings, the incidents of sexual abuse remain mere allegations. The strongest finding is Laura's acknowledgement to Dr. Pindelski that she had been "touched in the wrong places." The court did not find that this touching was sexual abuse and did not find that Christine had sexually abused the girls. Therefore, the court could not base its conclusion on sexual abuse.

■ David also argues that the court correctly premised its conclusions on Christine's mental health problems. Briefly, the court found the following facts with regard to Christine's illness: Christine had been hospitalized for treatment of a mental disorder prior to the dissolution of her marriage to David. The exact nature of Christine's disorder is not known because Christine had refused to waive the physician-patient privilege to allow discovery of her medical records. On April 23, 1988, Christine was again admitted for treatment of a mental disorder due to depression caused by the death of a relative and other personal troubles. David and his fiancee noticed some changes in behavior in the girls when they received temporary custody. Christine was again hospitalized for four weeks sometime after the June 1, 1988 hearing for treatment of a mental condition. Christine works part-time as a pharmacist at a hospital.

The trial court also adopted the written findings of Dr. Pindelski, the psychologist who evaluated Christine, David and the

girls into its findings of fact. Dr. Pindelski found in part:

> ... [Christine's] personality is intact, and ... there is confirmation of no distortion of reality indicative of a psychotic process. Her performance does indicate that at times she becomes depressed, ... but again there is no substantiation of gross incompetency or lack of capacity to function.... Planning and judgment are intact. She is friendly and congenial, and values warm interpersonal relationships. She does experience that as not always occurring in her life. Some of the testing does reveal the remorse and emotional responses she has towards the distancing from her daughters....
>
> Christine Owen ... appears to suffer from a disorder of mood. She currently receives treatment for this disorder, and as long as she complies with treatment, is able to act appropriately and displays good judgment.... When stressed, and threatened with abandonment (as historically occurred when the divorce occurred, and her father died), ... she may display some impairment in social functioning, but historically she has derived therapeutic benefit from hospitalization, and has been able to return to her former level of functioning.
>
> *    *    *    *    *    *
>
> Christine Owen, at the time of multiple interviews was oriented and in good contact with reality....

These findings do not support the court's conclusion that a substantial change in circumstances has occurred. Christine experienced mental illness before her divorce. Her more recent hospitalization is nothing new. While worsening mental condition may constitute a change in circumstances sufficient to necessitate modification of custody, David has failed to demonstrate here that her mental condition has worsened or that the circumstances of her mental disorder continuously and detrimentally affect the children's environment. *See Poret v. Martin, supra.* In fact, Dr. Pindelski's findings suggest that despite her mental disorders, Christine's ability to care for the children has not changed.

The case at bar is distinguishable from *Isom v. Isom, supra,* in which this court upheld a modification of custody. In *Isom,* the mother was diagnosed as suffering from Histrionic Personality Disorder, undiagnosed at the time of divorce, which had manifested itself in the care of her child. The mother had instructed her daughter to lie about the bruises on her buttocks, had thrown a hot skillet at her daughter, had devised a plan to take her daughter to South America to prevent the father from seeing her, and had engaged in other similar behavior. There is no evidence in the case at bar which shows how Christine's illness affects her children.

■ David also argues that the court could properly consider Christine's refusal to waive her physician-patient privileges for discovery purposes as evidence of the seriousness of her mental disorder and as evidence that her condition had worsened. Specifically, the trial court could infer that the evidence of her medical history was unfavorable to her.

It is true that from a party's non-production of available evidence, it can be inferred that the evidence would have been unfavorable to that party. *P.R. Mallory & Co. v. NLRB* (7th Cir.1968), 400 F.2d 956, 959; *Morris v. Buchanan* (1942), 220 Ind. 510, 44 N.E.2d 166; *Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 58. However, the inference can be drawn only from the party's failure to produce evidence available to it. In *P.R. Mallory & Co., supra,* for example, the defendant had failed to have an employee and participant in the transaction testify as to his personal knowledge. In *Porter Memorial Hospital, supra,* the defendant organization failed to produce its amended by-laws as evidence of the rights and duties of the parties. Here, however, Christine asserted a physician-patient privilege to prevent David from obtaining her medical records. She did not fail to testify; in fact, she testified that she was taking or had taken drugs for Wilson's Disease, delusions and manic depression. Asserting a privilege is not tantamount to failing to produce potentially favorable evidence within one's exclusive knowledge and

control. The court cannot infer from her assertion of a legal privilege that the evidence barred by the privilege was unfavorable.[2]

The court could have drawn an inference because Christine did not introduce her own physician to testify as to her mental condition. Nevertheless, the court did not consider that failure in its findings of fact. In fact, it ordered that all parties be evaluated by Dr. Pindelski and that no other evaluations would be admitted. It relied on Dr. Pindelski's findings, which state that Christine's condition is under control.

We find that the trial court's conclusion that substantial changes have occurred which make the original custody order unreasonable is not sustained by the factual findings. The court, therefore, abused its discretion in modifying its original custody decree.

Reversed and remanded.

HOFFMAN, P.J., and SULLIVAN, J., concur.

---

**2.** It appears from the record that the trial court erred in refusing to allow discovery of Christine's medical records. Medical records are privileged under the physician-patient privilege, IC 34–1–14–5, and are not discoverable absent a waiver by a patient. A party-patient waives his privilege as to matters causally or historically related to the condition she has put in issue when she puts her physical or mental condition in issue by way of a claim, counter-claim or affirmative defense. *Canfield v. Sandock* (1988), Ind.App., 521 N.E.2d 704, 706, *transfer pending*. The court, in determining child custody, shall consider, *inter alia*, the physical and mental health of all individuals involved. IC 31–1–11.5–21(a)(6). Indiana courts are deemed to have continuing jurisdiction over the custody of children during the children's minority. *State ex rel Werthman v. Superior Court of Marion* (1983), Ind., 448 N.E.2d 680, 683. Christine's mental condition was in issue when she was originally granted custody and remains in issue throughout the children's minority. She has, therefore, waived her privilege.