**Christine Ann OWEN, Appellant,**

v.

**David Todd OWEN, Appellee.**

**No. 45S03–9012–CV–788.**

Supreme Court of Indiana.

Dec. 13, 1990.

Rehearing Denied Feb. 11, 1991.

David E. Mears and Robert G. Berger, Merrillville, for appellant.

Martin H. Kinney and John R. Pera, Merrillville, for appellee.

## ON PETITION TO TRANSFER

### PER CURIAM.

This cause comes to us on a petition to transfer from the Third District Court of Appeals. *Owen v. Owen* (1990), Ind.App., 549 N.E.2d 410. The petition is brought by David Todd Owen, Appellee, who was successful in his petition for custody of two minor children in the trial court. The trial court found that a substantial change of circumstances compelled a change of custody. The Court of Appeals found that the trial court's conclusion that substantial changes had occurred was not sustained by the factual findings and that the trial court therefore abused its discretion in modifying its original custody decree. *Id.* at 416. The facts as set out by the Court of Appeals are as follows:

Christine and David Owen's marriage was dissolved on May 7, 1987. They are the parents of two daughters, Laura, born June 20, 1980, and Lisa, born August 18, 1984. Pursuant to the agreement of the parties, Christine was granted custody of the children. Even before their divorce, Christine had been hospitalized to undergo psychiatric treatment.

On April 23, 1988, Christine was admitted to our Lady of Mercy Hospital in Dyer, Indiana, for treatment of a mental disorder. At the time, her mother, the children's grandmother, was living in her home and helping her to care for the children when she was working. On the day she was admitted, the children were at David's home for weekend visitation. On Monday, April 25, 1988, David filed a verified petition for an emergency custody order based upon the fact that Christine had been admitted to a hospital for an as yet unknown period of time for treatment of a mental disorder. Christine did not know of these proceedings, but David's attorney contacted Christine's attorney who appeared on her behalf, though he had not conferred with Christine. The court granted David tem-

porary custody of the children subject to an immediate hearing when Christine was ready to appear.

Christine was discharged from the hospital on May 13. On May 26, she requested an immediate hearing, and hearing was granted for June 1. On May 27, David filed an amended petition for modification of custody. Hearing was held on June 1, and David had time only to present as evidence the testimony of Stana Michaels, who testified that it was her opinion that the children had been sexually abused. The hearing was adjourned, but based on Ms. Michael's testimony, the court continued temporary custody in David and restricted Christine's visitation. The hearing was continued until August 16. (Later in the proceedings, the trial court, on Christine's motion, ordered all parties evaluated by a court-appointed psychologist and struck the testimony of Ms. Michaels.)

On August 8, Christine moved for a continuance and the hearing was reset for September 29. On August 22, David moved to continue and hearing was reset for October 27. On August 26, Christine moved to have psychological evaluations performed. Trial was finally held on February 7 and 8, 1989. Christine had moved to have special findings of fact entered before any evidence was presented on June 1. On February 24, 1989, the court entered its special findings of fact and conclusions of law, and granted David custody of the children.

*Id.* at 412.

Appellant Christine Owen claimed her right to due process was violated when the court granted David's petition for an emergency custody order without giving her notice and opportunity to present evidence before the children were removed and, further, did not grant her request for an immediate hearing and did not conduct a hearing on the merits for eight months. The Court of Appeals concluded that Christine's due process rights were not violated. We find the Court of Appeals adequately disposed of this issue and adopt their language in Issue I, captioned "Due Process" in their opinion.

The facts pertinent to the resolution of the second issue, concerning substantial change of circumstances, involved the mental disease or disorder of Christine and its effect on her ability to give responsible care to the children. The Court of Appeals found there was insufficient evidence to show such a change of conditions since there was evidence that before the final dissolution, Christine had been hospitalized for some weeks because of a mental disorder. The reasoning of the Court of Appeals seemed to be that there was insufficient showing of an increase in this disorder meriting a finding of change in circumstances before the trial court. We disagree. In reversing the trial court, the Court of Appeals violated its own stated standards for reviewing a trial court judgment. In *Isom v. Isom* (1989), Ind.App. 538 N.E.2d 261, the Court of Appeals found that the function of appellate court in an appeal from a custody modification decree is to determine whether the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Custody may be modified upon a showing of changed circumstances so substantial and continuing as to make the existing order unreasonable in view of the best interest of the child. I.C. 31–1–11.5–22(d); *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888.

This issue was somewhat complicated by the fact that Christine resisted efforts of David to obtain medical records. David attempted to discover her medical records to ascertain and present into evidence matters pertinent to her physical and mental condition up to the day of trial. By way of answers to interrogatories Christine identified each and every physician and hospital providing her treatment during the months leading up to the hearing in the trial court, but during her pretrial deposition, she refused to answer questions concerning the nature and extent of her treatment or to disclose any of her medical records related thereto. She claimed the physician-patient privilege as a basis for such refusal. Her refusal was the subject of a motion to compel discovery filed by David in advance

of trial and, after a hearing, her refusal was sustained by the trial court. David was thus put in the position of being frustrated in his attempt to put in the pertinent evidence on this issue and then having the courts find he failed to carry his burden by the lack of that very evidence.

■ The Court of Appeals correctly noted that in child custody proceedings, the mental and physical health of all parties involved become subjects for consideration by the trial court, I.C. 31–1–11.5–21, and that Indiana courts have continuing jurisdiction over the custody of children during their minority, *Owen*, 549 N.E.2d at 416 n. 2 (citing *State ex rel. Werthman v. Superior Court of Marion* (1983), Ind., 448 N.E.2d 680, 683). Christine placed her mental condition in issue when she petitioned for and was granted custody under the original order, and that condition remains in issue for the purposes of custody questions during the children's minority. Therefore, her blanket assertion of the physician-patient privilege regarding her mental condition and treatment was not justified.

■ When a party-patient places a condition in issue by way of a claim, counterclaim, or affirmative defense, she waives the physician-patient privilege as to all matters causally or historically related to that condition, and information which would otherwise be protected from disclosure by the privilege then becomes subject to discovery. *Collins v. Bair* (1971), 256 Ind. 230, 242, 268 N.E.2d 95, 101. This Court addressed the question of the extent of that waiver very recently in *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526, and found that the filing of a claim does not waive the privilege as to the party's entire medical record and that "information which is unrelated to the condition in issue and irrelevant to the cause remains privileged and therefore protected from discovery." *Id.* at 530. We also held that, in all cases except those which would reveal conditions which are irrelevant to the condition in issue and which are of a highly intimate or embarrassing nature, liberal discovery should proceed unimpeded and parties should expect to make full disclosure of medical records sought pursuant to the rules of discovery and that, in those rare cases where the physician-patient privilege is properly invoked, it is incumbent on the party seeking to assert the privilege to identify to the court specifically which documents are believed to remain within the privilege, after which the court will review the contested documents in camera to ascertain their entitlement to the protection of the privilege. *Id.* at 530–531. Christine's assertion of the physician-patient privilege was patently overbroad as it sought to prevent the disclosure of any information about her mental condition, which was itself the condition in issue and clearly relevant to the custody question. The Court of Appeals found, and we agree, that the evidence was properly the subject of discovery and admissible and, absent a motion for a protective order narrowly drafted to cover specific items, the records should have been found discoverable by the trial court.

■ Be that as it may, the trial court obviously felt there was sufficient evidence to grant the change in custody even without considering the details of such medical records. There is no question but that a worsening mental condition may constitute a change in circumstances sufficient to necessitate modification of custody. The only evidence of a prior mental condition at the time of dissolution was the fact that Christine had been hospitalized for a period of weeks sometime prior to the dissolution order. The court had before it evidence that in April, 1988, Christine spent a period of about three weeks, which extended to about the middle of May, in the hospital because of her mental condition. It was this situation which prompted the trial judge to give temporary emergency custody to David. There was further evidence that shortly after her release, or in early June, she was readmitted to the hospital for a period of four weeks. She testified she had delusions when admitted in June. Christine further testified she spends $500.00 per month for medical expenses, was seeing a psychiatrist once a week and

had been doing so since July, 1988, following her release after the June admission and that she was on different medication after the dissolution proceedings than she was before. She testified she had among her medications, Lithium, used for the treatment of a manic depressive disorder. She also testified she suffers from Wilson's disease, which can produce mental disorders, but did not know the relationship between this and her recent hospitalizations. This evidence supported the trial court in its judgment that Christine's worsening mental condition provided substantial evidence of a change of circumstances which, in the best interest of the children, merited a change of custody.

The opinion of the Court of Appeals is vacated and the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., concurs in result.

PIVARNIK, J., concurs in result with separate opinion, in which GIVAN, J., concurs.

PIVARNIK, Justice, concurring in result.

While I agree with the result reached by the majority, I write separately due to the undue emphasis the majority places on who the petitioning party is and who ultimately gains custody of a child in a dissolution proceeding. In any dissolution proceeding involving determinations to be made by the trial court regarding the custody of minor children, the fitness of each parent to care for the child is at issue. It does not matter who petitions for dissolution of the marriage or who is initially awarded custody; the paramount interest is that of the child. No finding need be made by the trial court that one party or the other waived his or her physician-patient privilege by putting their mental or physical condition at issue where the custody of a minor child is being considered.

Moreover, *Canfield v. Sandock*, (1990), Ind., 563 N.E.2d 526 is inapplicable to the instant case. In *Canfield*, a majority of this Court vacated an opinion of the Court of Appeals which reversed the trial court's imposition of fees against an attorney who sought certain medical records relative to plaintiff's injuries arising out of an automobile-pedestrian accident. This author dissented from the majority's granting transfer and vacating the Court of Appeals' opinion in *Canfield*. I feel the majority's finding in *Canfield* will confuse and confound trial judges and lawyers in this State regarding the discovery of medical records in negligence actions where the physical condition of the parties is in issue. I remain astounded that this Court would affirm the trial court in sanctioning a lawyer in seeking to discover relevant medical information on behalf of his client. However, notwithstanding my dissent, *Canfield* was a negligence action where the nature and extent of plaintiff's injuries were in issue. It is both legally and factually distinguishable from the case at bar, where it is incumbent upon the trial court to make a determination as to the fitness of each parent to raise a child.

For these reasons, I concur in result only.

GIVAN, J., concurs.