Rosita L. CUA, Appellant–Plaintiff,

v.

Paul W. MORRISON, Stephen M. Paterson, and State Farm Mutual Automobile Insurance Company, Appellees–Defendants.

No. 29A05–9212–CV–456.

Court of Appeals of Indiana, Second District.

Dec. 29, 1993.

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis Wegner & Associates, Indianapolis, for appellant-plaintiff.

Robert C. Riddell, Kevin C. Schiferl, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee-defendant Stephen M. Paterson.

SULLIVAN, Judge.

Rosita L. Cua ("Cua") and Stephen M. Paterson ("Paterson") jointly submit this permissive interlocutory appeal from the trial court's Order requiring Cua, the plaintiff in a personal injury tort claim, to execute a letter authorizing defense counsel to conduct informal, *ex parte* interviews with her health-care providers.

Pursuant to Appellate Rule 4(B)(6), the trial court certified the issue to us as follows:

> "Whether the Trial Court abused its discretion in entering an Order requiring plaintiff to sign a release allowing defense counsel to engage in ex parte communication with plaintiff's medical care providers." *Joint Petition To Entertain Jurisdiction of Permissive Interlocutory Appeal* at 2.[1]

The case is one of first impression in Indiana and we note that courts across the country are sharply divided upon the issue.

We hold that the trial judge abused her discretion in ordering discovery to be conducted in this manner and that *ex parte* interviews with a party-patient's health-care providers by opponent's counsel impermissibly compromises the physician-patient privilege. We further hold that prohibiting such *ex parte* interviews is not unfair to the opposing party.

The record reveals that on February 22, 1990, Cua and Paul Morrison ("Morrison") were involved in an automobile accident. A few weeks later, Cua was involved in another automobile accident with Paterson. Cua filed suit against both Morrison and Paterson claiming personal injury as a result of the accidents.

During the course of discovery, Paterson wrote a letter to Cua acknowledging receipt of reports from two of Cua's treating physicians and requesting that Cua execute a release authorizing defense counsel to discuss the reports directly with those physicians. Paterson also requested that Cua execute a general release authorizing interviews with any of Cua's other health-care providers.[2] Cua's attorney agreed to allow

---

1. This court earlier dismissed an interlocutory appeal brought pursuant to Appellate Rule 4(B)(1). *Cua v. Morrison* (1992) 2d Dist.Ind. App., 600 N.E.2d 951.

2. Both releases are identical and provide:
   "This release authorizes the physicians, dentists, chiropractors, nurses, therapists, hospitals, clinics, dispensaries, home health care centers, psychiatrists, psychologists, social workers, or any other medical facility or health or social worker or care provider to discuss with, release for copying or provide copies to Robert C. Riddell, or any other representative of the firm of Locke Reynolds Boyd & Weisell, ... the following: any and

formal depositions of the physicians but refused to allow informal interviews unless Plaintiff's counsel was present. Paterson then filed a motion with the trial court to compel Cua to sign the releases and to compel her counsel to execute a letter authorizing her health-care providers to confer with defense counsel. The trial court granted the motion.

Indiana has created a physician-patient privilege by statute which renders physicians incompetent to testify regarding matters communicated to them by patients in. the course of diagnosis or treatment.[3] However, when a patient places her mental or physical condition at issue in a law suit, she has impliedly waived the physician-patient privilege to that extent. *Collins v. Bair* (1971) 256 Ind. 230, 268 N.E.2d 95, 101; *Canfield v. Sandock* (1990) Ind., 563 N.E.2d 526. The privilege is only waived as to "those matters causally and historically related to the condition put in issue *and which have a direct medical relevance to the claim, counterclaim or defense made.*" (Emphasis in original.) *Collins, supra,* 268 N.E.2d at 101. Medical information not related to the claim retains its privileged status and is not discoverable. *Id.*

We note at the outset that this appeal is not about what information Paterson may discover, rather, it is about how Paterson may discover it. Several courts have characterized this issue as a balance between seeking the truth and protecting a privilege.[4] We do not. *"[I]n not one instance* has a court found that *ex parte* conferences were necessary in order to permit

all medical records, reports, X-rays, hospital records, evaluations or tests, photographs, notes, bills, payment schedules, prescriptions, or any other results of investigation, diagnosis, treatment or prognosis concerning injuries, ailments, disabilities, deformities, handicaps or pains claimed by or in connection with the below-described condition of the above plaintiff. This Authorization shall extend to any condition, past or present, of this patient which is in any was causally or historically relevant to the claim of Rosita L. Cua of physical, mental and emotional injuries allegedly resulting from an automobile accident which occurred on or about the 14th day of March, 1990, in the City of Indianapolis, Indiana. This Authorization is made in con-

defense counsel to obtain information that they were unable to obtain through the regular channels of discovery." (Emphasis in original.) *Petrillo v. Syntex Laboratories, Inc.* (1986) 1st Dist., 148 Ill.App.3d 581, 102 Ill.Dec. 172, 176, 499 N.E.2d 952, 956, *cert. denied,* (1987) 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738.

I. *Standard of Review*

■ The grant or denial of motions for discovery is within the discretion of the trial court and will be overturned only for abuse of discretion. *Canfield, supra,* 563 N.E.2d at 530. We may find an abuse of discretion only if the order is unreasonable in light of all attendant circumstances and is prejudicial to Cua's rights. *Emmons v. State* (1986) Ind., 492 N.E.2d 303.

■ Paterson contends that in *Collins* our Supreme Court recognized an almost boundless latitude on the part of the trial judge to authorize discovery where a patient has put her medical condition at issue. We disagree. In *Collins,* our Supreme Court stated that the trial court must closely supervise discovery in this area and "should not lightly consider a party patient's right to invoke the physician-patient privilege as to any [unrelated] matters ... [l]est the physician-patient privilege become nothing more than a legal anachronism...." *Collins, supra,* 256 Ind. at 242, 268 N.E.2d at 101. The Court expressed its concern that the limited waiver of the privilege not be used to allow defense counsel to conduct a "fishing expedition" into unrelated matters. *Id.* In *Canfield v. Sandock, supra,* our Court stated:

nection with litigation involving this patient." Record at 18–19.

3. I.C. 34–1–14–5(3) (Burns Code Ed.Supp.1992).

4. *Felder v. Wyman* (1991) D.S.C., 139 F.R.D. 85, 90; *Lazorick v. Brown* (1984) A.D., 195 N.J.Super. 444, 480 A.2d 223, 229; *Doe v. Eli Lilly & Co., Inc.* (1983) D.D.C., 99 F.R.D. 126, 128.

Although our Supreme Court has stated that the suppression of truth may sometimes result from the claim of a privilege, *Collins, supra* at 98, this appeal is not so much concerned with the claim of a privilege as with the permissible methods of discovery.

"Full and unlimited disclosure ... could reveal, for example, that the plaintiff had been tested for or diagnosed as having AIDS or some other sexually transmitted disease or that a female plaintiff had undergone an abortion procedure.... [T]he discovery process which would authorize the disclosure of unrelated and potentially embarrassing or ruinous information could only undermine the purpose of the physician-patient privilege." 563 N.E.2d at 530.

We hold that the trial judge abused her discretion because the method of discovery ordered poses a substantial threat that privileged information would be disclosed and that such information is not required for fair and efficient trial preparation.

## II. *Danger of Disclosure*

■ Paterson argues that the court's order adequately protects Cua's privileged medical information because the authorization is expressly limited to medical conditions claimed by or in connection with the automobile accident involving Paterson. This argument misses the mark. The order makes Paterson's attorney and Cua's physicians the sole arbiters of what conditions are relevant to Cua's claim.

The supervision of what is discoverable cannot be delegated to a physician and a defendant's attorney or representatives.[5] *See Roosevelt Hotel Ltd. Partnership v. Sweeney,* (1986) Iowa, 394 N.W.2d 353, 357. A physician is not trained in deciding what is or is not legally relevant. A patient and her opponent's counsel are likely to disagree upon what information has a direct medical relevance to the claim. Without attributing improper motives to the defense bar, the very nature of the adversary process makes it unlikely that a defendant's attorney will adequately safeguard the interests of the plaintiff during an *ex parte* interview. The defendant's attorney is obligated to discover evidence that is believed to be relevant in order to fulfill the duty to

the client, even if the relevance of the solicited information is contested by the plaintiff. Further, because a defendant's attorney would likely be unaware that the answer to a question requires the disclosure of privileged information, it would be impossible, as a practical matter, for the defense counsel to protect this as yet unuttered statement.

■ Cua's argument that the order does nothing to ensure that Paterson's inquiry will be limited to relevant conditions is convincing. The physician-patient privilege may only be waived by Cua. *See Canfield, supra,* 563 N.E.2d at 529. However, she would have no opportunity to exercise the privilege if she or her counsel could not be present during the interview. To take this concept to the extreme, it would be impossible for a patient to seek protection from the court, if necessary, where the patient has no idea that an *ex parte* interview has taken or is about to take place.

## III. *Fair Trial Preparation*

■ Paterson argues that *ex parte* interviews of the opponent's physician are necessary for fair trial preparation. Paterson first contends that allowing Cua's counsel to be present during an informal interview with her health-care providers would allow Cua access to his counsel's work product. This argument is unpersuasive. Work product protects an attorney's notes and memoranda reflecting the attorney's theories and mental impressions about the case. *Hickman v. Taylor* (1947) 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; Ind.Trial Rule 26(B)(3). As stated in *Petrillo v. Syntex Laboratories, Inc., supra,* "A plaintiff's attorney, by merely being present at a treating physician's deposition, 'monitors' nothing more than the questions asked and the answers given." 102 Ill.Dec. at 183, 499 N.E.2d at 963. If counsel's questions were protected work product, all discovery,

5. While it is the usual case that the physician sought to be interviewed is the plaintiff's physician, the condition and medical history of a

defendant might well be an issue in a particular case. The issue therefore is of moment to all tort litigants.

including interrogatories and requests for admissions, would be impermissible.

■ Next, Paterson argues that allowing Cua unfettered access to her health-care providers while restricting his counsel's access will give Cua an "obviously unfair advantage."[6] Brief of Appellee at 14. He states that because of restricted access, he will be limited to taking a deposition or foregoing knowledge of crucial evidence. We do not agree. There are several other methods of discovery that are not as expensive and are effective, including informal interviews in the presence of plaintiff's counsel. Paterson has not pointed to any information which he could obtain from an *ex parte* informal interview which he could not obtain by other means.

■ Paterson quotes from *Doe v. Eli Lilly & Co.* (1983) D.D.C., 99 F.R.D. 126, 128, in arguing that restricting his counsel's access will allow Cua to control the timing and circumstances of the release of unprivileged information to her own advantage:

"The privilege was never intended, however, to be used as a trial tactic by which

a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time."

Preventing *ex parte* interviews will not allow the patient to withhold pertinent information until the last minute. As our Supreme Court stated in *Collins, supra,* the physician-patient privilege is waived as soon as a patient puts the condition in issue. A prohibition on *ex parte* interviews controls the method of gathering information, not the timing of the release of that information.

■ Paterson contends that allowing a patient to restrict or deny access to medical information intimidates the medical witness by forcing him to withhold or divulge "what he knows at his peril".[7] Brief of Appellee at 17. The witness does not choose between divulging information to which the defense counsel in entitled or violating his professional oath.[8] The medical witness does not violate his oath or face legal liability by revealing information about the medical condition the patient has put in issue. An ethical or legal dilemma

**6.** Paterson cites *Bryant v. Hilst* (1991) D.Kan., 136 F.R.D. 487, 491, for the proposition that "[p]laintiff's treating physicians and other health care providers are fact witnesses. What plaintiff requests is complete control over a group of fact witnesses.... There is no such similar circumstance with respect to other fact witnesses."

This theory fails upon two grounds. First, the physician is not simply a fact witness. "The physician is not a neutral witness. He or she owes a preexisting duty of confidentiality to the patient-plaintiff." Philip H. Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient–Litigant's Right to a Fair Trial,* 21 Loy.U.Chi.L.J. 1001, 1028 (1990). Second, there are other witnesses over whom the plaintiff has some control. Our legislature has created similar privileges regarding communications between attorney and client, clergymen and penitent, and husband and wife. 34–1–14–5 (Burns Code Ed.Supp. 1992)

However, this issue is not dispositive of the case because regardless of the classification given the health-care provider, the patient is not given complete control over the physician's testimony since there are several other methods by

which the defendant can gather relevant information.

**7.** We note that Paterson appears to take inconsistent positions. On the one hand, he argues that a physician does not need a patient's attorney as a "watchdog" in order to fulfill his professional duty of confidentiality. On the other hand, Paterson argues that the privilege places the physician in a position where he must disclose relevant information or violate his professional duty. Taking this argument as true, it would seem that a physician in such an untenable position would need the benefit of legal counsel.

**8.** Every physician takes the Oath of Hippocrates which states in relevant part:

"[W]hatever, in connection with my professional practice, or not in connection with it, I see or hear, in the life of men, which ought not to be spoken abroad, I will not divulge as reckoning that all such should be kept secret...." David L. Woodard, *Shielding the Plaintiff and Physician: The Prohibition of Ex Parte Contacts With a Plaintiff's Treating Physician,* 13 Campbell L.Rev. 233 (1991).

only occurs where the witness divulges privileged information. Whether a medical witness should be placed in this position is not a question for this court, for the legislature has decided to place that burden upon the physician as well as upon other fiduciaries.[9]

 Paterson claims that *ex parte* interviews promote efficient and inexpensive discovery which serves the policies of Indiana's liberal discovery rules. Paterson claims that informal interviews are less costly, an efficient method to eliminate non-essential witnesses, and less likely to involve scheduling problems than other forms of discovery. As discussed above, there are other available means of discovery, which are not unduly burdensome. Counsel, in good faith, should be able and willing to accommodate each other in discovery by as many means as the ingenuity of lawyers can conceive. Cooperative counsel can arrange meetings between the physician and counsel for both sides. That is hardly more of a burden than the arrangement of a meeting between the physician and counsel for one side only.

Paterson maintains that *ex parte* interviews promote early evaluation and settlement of claims. As noted in the *Petrillo, supra,* it is not the method of discovery that leads to early settlement, rather, it is the information obtained through discovery. *Petrillo, supra,* 102 Ill.Dec. at 185, 499 N.E.2d at 965. Since the information can be obtained by other means, the possibility of an early settlement is not compromised.

The relationship of patient to physician is a particularly intimate one. To the physician we bare our bodies and or psyches. We do that in confidence that what is seen and heard will remain unknown to others. The protection of that confidential relationship is worth some inconvenience to the legal process.

We reverse the ruling of the trial court and remand with instructions to vacate the order.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.

---

9. The legislature has also seen fit to grant privileged status to communications between attorney and client, clergymen and penitent, and husband and wife. I.C. 34–1–14–5 (Burns Code Ed.Supp.1992).