**Patricia and Livio ANDREATTA,
Appellants–Plaintiffs,**

v.

**Wayne and Virginia HUNLEY,
Appellees–Defendants.**

No. 43A04–9806–CV–328.

Court of Appeals of Indiana.

July 27, 1999.

Craig A. Rieff, Robert F. Gonderman, Jr., Gonderman Legal Corporation, P.C., South Bend, Indiana, Attorneys for Appellants.

Millard P. Plumlee, Lemon, Armey, Hearn & Leininger, Warsaw, Indiana, Attorney for Appellees.

## OPINION

MATTINGLY, Judge

Patricia and Livio Andreatta appeal the denial of their motion to quash, motion for protective order, and motion for sanctions. We restate the issues presented for review as follows: did the trial court's order, which allowed an adverse party to obtain copies of Patricia's medical records directly from her in-state health care providers through Trial Rule 34(C) subpoenas and from her out-of-state health care providers via signed medical authorizations, improperly prevent Patricia from asserting her physician-patient privilege?

We affirm.

### FACTS AND PROCEDURAL HISTORY

Patricia Andreatta slipped and fell while she was a social guest of Wayne and Virginia Hunley on July 29, 1995. The Andreattas filed suit against the Hunleys, seeking damages for personal injuries she sustained in that fall. During the course of discovery, the Hunleys served interrogatories upon Patricia seeking information about her medical condition and treatment. In her answers to interrogatories, Patricia identified five health care providers. Patricia then requested her medical records from some of those providers. After she received those records, Patricia produced them for the Hunleys' inspection.

On March 31, 1998, the Hunleys served the Andreattas with proposed Trial Rule 34(C) requests for production and subpoenas for the production of medical records from Patricia's medical providers located in Indiana. In compliance with Trial Rule 34(C), the Hunleys asked the Andreattas to "[p]lease advise if you have any objections to these requests," R. at 22, and stated "If I do not hear from you otherwise, the requests will be served fifteen (15) days from the date of this correspondence." *Id.* In addition, the Hun-

leys served the Andreattas with medical authorizations for the release of Patricia's records from her out-of-state medical providers. The information sought by the Hunleys included records relating to Patricia's pre- and post-accident medical treatment.

On April 2, 1998, the Andreattas' attorney objected to service of the subpoenas and requests for production, asserting that "your proposed request and subpoena would totally remove my client's opportunity to assert a privilege objection to irrelevant medical records." *Id.* at 24. Instead, the Andreattas' attorney proposed that:

> 1. I will send you copies of the full and complete records you seek, unless any item is privileged, in which case I will let you know my objections so we can move to an *in camera* review.
>
> 2. We submit a stipulated order which allows you to obtain medical records ... directly from the provider **after** I have had a chance to review the same....

*Id.* at 24, 25 (emphasis in original).

That proposed order is not found in the Record. However, on April 24, 1998, the Andreattas' counsel provided the Hunleys' attorney with a copy of a joint order which set out the procedure the Andreattas wished to follow. That order, among other things, would have required the medical provider to make two copies of all the medical records requested and number each set of copies serially. If the Andreattas' counsel reviewed his copy and had no objection, the second copy was to have been sent to the Hunleys' counsel. If there was an objection, the medical provider was to segregate the records objected to and send those records directly to the trial court judge in a sealed envelope for an *in camera* review. The proposed order would have required the trial court to then review the records *in camera* and rule on the availability of the physician-patient privilege. The costs of this procedure were proposed to be assessed to the plaintiff and the defendant equally.

The Hunleys moved to compel discovery on April 29, 1998, asking the court to order Patricia to execute the medical authorizations to be sent to out-of-state medical providers and to allow the Hunleys to send the in-state nonparty requests for production and subpoenas. The Andreattas filed a motion to quash, a motion for protective order, and a motion for sanctions.

After a hearing, the trial court granted the Hunleys' motion to compel, ordering Patricia to execute written medical authorizations to the out-of-state medical providers. Those authorizations were limited to treatment records relating to the portion of Patricia's body injured in the slip and fall, and were not to "allow disclosure of past or current medical condition which is totally unrelated to the condition at issue." *Id.* at 70. The trial court denied the Andreattas' motions and this appeal ensued.

## DISCUSSION AND DECISION

### 1. *Non–Party Requests for Production*

The grant or denial of a discovery motion is within the trial court's discretion and will be overturned only for an abuse of discretion. *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1170 (Ind.Ct.App. 1995), *reh'g denied.* An abuse of discretion in this context occurs only if the order is unreasonable in light of all of the attendant circumstances and is prejudicial to a party's rights. *Cua v. Morrison*, 626 N.E.2d 581, 583 (Ind.Ct.App.1993), *adopted*, 636 N.E.2d 1248 (Ind.1994).

The Andreattas contend that allowing the Hunleys to acquire Patricia's medical records directly from her health care providers without allowing Patricia "to see exactly what will be disclosed, *before disclosure*, would undermine if not eliminate the party's ability to assert meaningful, specific and timely privilege objections." Appellant's Brief at 14 (emphasis in original). They argue the trial court's ruling violated our supreme court's holding in *Canfield v. Sandock*, which delineated "the respective boundaries of the physician-patient privilege and the scope of discovery where the two are in conflict." 563 N.E.2d 526, 528 (Ind.1990), *reh'g denied.* The Hunleys contend that Trial Rule 34(C) adequately protects the Andreattas' physician-patient privilege.

Trial Rule 34(C) provides:

A witness or person other than a party may be requested to produce or permit [production of documents]. Such request shall be served upon other parties and included in or with a subpoena served upon such witness or person. Neither a request nor a subpoena to produce or permit as permitted by this rule shall be served upon a non-party until at least fifteen (15) days after the date on which the party intending to serve such request or subpoena serves a copy of the proposed request and subpoena on all other parties.

Ind.Code § 34–46–3–1(2) provides that physicians shall not be required to testify regarding matters communicated to them by their patients in the course of their professional business. As our supreme court explained in *Collins v. Bair*, 256 Ind. 230, 268 N.E.2d 95 (1971), the physician-patient privilege:

> has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

*Id.* at 236, 268 N.E.2d at 98.

■ However, the physician-patient privilege is not absolute. When a party places his or her physical condition at issue, that patient has impliedly waived the physician-patient privilege as to those matters which are causally and historically related to the condition put in issue and which have direct medical relevance to the claim. *Canfield*, 563 N.E.2d at 529. Information which would otherwise be protected from disclosure by privilege then becomes subject to discovery. *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990), *reh'g denied*.

The Andreattas characterize *Canfield* as teaching that "direct disclosure of medical information poses the risk that privileged matters will be improperly discovered before meaningful objections can be filed and the matter heard *in camera* by the Court." Appellant's Brief at 14. They contend that "[t]he trial rules will not be construed to allow direct access to medical information without the right of the patient to know precisely what is to be produced, before production, so that the patient can raise any privilege objections he or she deems appropriate." *Id.* at 13.

■ When a patient who is a party to a lawsuit places her physical condition at issue, as has Patricia in the case before us, the patient has impliedly waived the physician-patient privilege as to that condition. *Canfield*, 563 N.E.2d at 529. The Andreattas correctly note that certain medical records can be protected from disclosure because of the physician-patient privilege. *See id.* at 530 ("[M]edical information which is unrelated to the condition in issue and irrelevant to the cause remains privileged and therefore protected from discovery."). However, once the physician-patient privilege has been invoked, the burden is upon the party claiming it to prove his entitlement to its protection:

> [T]he bare assertion of a claim of privilege will not suffice to block discovery of the information sought by the discovery request. Rather, the trial court must review the contested materials and determine whether the claim of privilege is justified or mistaken and whether production of the requested documents should be barred or compelled.

*Id.* at 531.

> [I]n those rare cases where the physician-patient privilege is properly invoked, it is incumbent on the party seeking to assert the privilege to identify to the court specifically which documents are believed to remain within the privilege, after which the court will review the contested documents in camera to ascertain their entitlement to the protection of the privilege.

*Owen*, 563 N.E.2d at 608.

■ We accept the Andreattas' premise that a plaintiff, or other party about whom records may be produced, has the right to review those records to determine whether production of some of those documents is

protected by the physician-patient privilege. However, we believe the trial court's order did not divest the Andreattas of that right.

The burden of proving that a medical record implicates the physician-patient privilege and should not be produced lies on the party seeking to assert the privilege. *Id.* The Andreattas have not met that burden. Effective February 1, 1995, Trial Rule 34(C) was amended to provide, for the first time, that non-party requests for production and subpoenas were not to be served on the non-parties until fifteen days after they had been served on opposing counsel. This fifteen-day period allows a plaintiff or defendant an opportunity to object to the non-party request. The Andreattas did object within this time period. However, in the hearing on the motion to compel the Andreattas admitted that they already had copies of some of the medical records.[1] They also admitted that they had not requested copies of other records.[2] Further, the Andreattas' counsel admitted that either the documents reviewed were not privileged, or he did not anticipate any privilege objection to the records not yet reviewed.

Under Ind.Code § 16–39–1–1(c), a health care provider must supply a patient with all health records possessed by that provider concerning the patient upon written request and reasonable notice. There is no indication in the record that anything precluded the Andreattas or their attorney from obtaining or reviewing Patricia's medical records. As a result, we believe the Andreattas had a full opportunity to review Patricia's records. They did, in fact, review some of the records; with regard to the records they did not re-

view, we observe that there was a period of more than a month between the time the Andreattas received copies of the non-party requests and the hearing on the motion to compel. This was ample time for the Andreattas to request and obtain those records.[3]

The Andreattas argue, however, that according to *Canfield* and *Cua,* they are entitled to review the records which will be sent to opposing counsel before those records are provided. They also urge us to adopt the tortuous procedure of requiring medical providers to make two copies of all records, number them and send them to counsel. We decline to impose such a procedure upon medical providers or our trial courts, as we read neither *Canfield* nor *Cua* as grafting this requirement onto Trial Rule 34(C).

Our supreme court expressly adopted our opinion in *Cua,* in which we disapproved the practice of allowing a defense counsel to interview plaintiff's doctor without plaintiff's counsel present because the plaintiff "would have no opportunity to exercise the privilege if she or her counsel could not be present during the interview." 626 N.E.2d at 584. That is not the situation in the present case. The Andreattas have either reviewed the medical records themselves or had the opportunity to review those records and declined to do so. The trial court did not err in denying the Andreattas' motions.

### 2. *Medical Authorizations*

 The Andreattas argue the trial court exceeded its authority by ordering Patricia to execute medical authorizations which allowed the Hunleys to obtain Patricia's med-

---

1. The hearing included the following exchange:
 Court: Why don't you know [what is in the record]? You represent the Plaintiff. Couldn't you get a medical release and get these?
 · Counsel:I've already got records like that, your Honor, in this case and I have no objection and have produced those.
 R. at 112.
 Court: But you've reviewed those records and you can object to anything that is, that you maintain has a privilege.
 Counsel: That is true. . . .
 *Id.* at 116.

2. Court: Why don't you have those records already?

Counsel: Frankly, they are not related. I see no reason to get them, but if he wants them, I'll get them and review them, and I'll certainly give them to him if there's not privileged material.
R. at 122.

3. This case does not present a situation where a plaintiff represents to the trial court that she had tried to obtain the medical records to review but had not yet received them or had an opportunity to review them. Our holding here might well have been different had those been the facts before us.

ical records directly from out-of-state medical providers. Generally, matters concerning discovery methods that the trial rules do not govern are matters for a trial court's exercise of discretion. *Jacob v. Chaplin,* 639 N.E.2d 1010, 1012 (Ind.1994). Because the scope of discovery is highly dependent on the facts of each case, the fact-sensitive nature of discovery issues requires a high degree of deference to the decision of the trial court. *Steele v. McDonald's Corp.,* 686 N.E.2d 137, 142 (Ind.Ct.App.1997). We will interfere with a trial court's ruling on discovery matters only where an abuse of discretion is apparent. *Brown v. Dobbs,* 691 N.E.2d 907, 909 (Ind.Ct. App.1998). An abuse of discretion occurs only where the trial court's decision is against the logic and circumstances of the case. *Id.*

 In this case, the Hunleys would be unable to issue a subpoena for Patricia's medical records under Trial Rule 34(C) to an out-of-state medical provider. The trial court acted within its discretion in ordering Patricia to sign medical authorizations so that the Hunleys could obtain those medical records from out-of-state medical providers. Those authorizations were limited to treatment records relating to the portion of Patricia's body injured in the slip and fall, and were not to "allow disclosure of past or current medical condition which is totally unrelated to the condition at issue." R. at 70. There is no indication that the Andreattas could not have obtained and reviewed these out-of-state records prior to the medical authorizations. Thus, we cannot say the trial court abused its discretion.

## CONCLUSION

The trial court did not abuse its discretion when it permitted the Hunleys to obtain Patricia's medical records from her medical providers when the Andreattas had already reviewed, or had ample opportunity to review, the records. Nor did it abuse its discretion by requiring Patricia to sign medical authorizations so the Hunleys could obtain her medical records from out-of-state health care providers.

The trial court's orders are affirmed.

Affirmed.

NAJAM, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting

I believe that affirming the trial court's action in this case significantly threatens the physician-patient privilege in Indiana and, more importantly, unnecessarily compromises the confidentiality of privileged medical records of future civil plaintiffs. I therefore respectfully dissent from the majority's conclusion that the trial court did not err in permitting the Hunleys to obtain Patricia's medical records directly from her health care providers without first giving her an opportunity to inspect the materials they propose to send.

The relevant facts are not in dispute. Patricia produced the requested medical records for the Hunleys' inspection. Apparently concerned that they had not received all of the records, the Hunleys served the Andreattas with a Trial Rule 34(C) nonparty request for production of documents and subpoenas, seeking to obtain Patricia's medical records directly from the providers. The Andreattas objected and moved to quash on the ground that they were entitled to view the medical records that the various health care providers proposed to send *before* they were viewed by the Hunleys, in order to determine whether any materials would be covered by doctor/patient privilege. The trial court denied the Andreattas' request. The majority affirms that action and holds that a civil plaintiff does not have a right to review medical records that a health care provider proposes to send in response to a discovery request.

I address initially the Hunleys' claim that none of Patricia's records are privileged. The Hunleys note that Patricia's complaint for damages claimed injuries to the whole person. They argue, "Given such a broad spectrum of injuries, it is hard to imagine any information in Mrs. Andreatta's medical records which would not be causally and historically relevant to her claimed injuries."

Appellee's Brief at 9. I cannot agree that personal injury plaintiffs waive the physician/patient privilege entirely with regard to *all* of their medical records when claiming injuries to the whole person. Among other things, it is common practice in the course of personal injury litigation to describe the degree of permanent impairment in terms of disability of the whole person. Thus, when Patricia claimed an impairment of her ability to function as a whole person, she was not saying that every component of her person was impaired by the claimed degree. Rather, she was claiming that the injured member or component, in this case her leg, impaired her ability to function as a whole person by the claimed degree. Viewed in this light, it is clear that a claim of impairment of the whole person does not necessarily make all of a personal injury plaintiff's medical records and medical history relevant in a negligence lawsuit.

In *Canfield v. Sandock*, 563 N.E.2d 526 (Ind.1990), our supreme court explained the danger of such an expansive interpretation:

> Under Canfield's interpretation of *Collins*, all of the files maintained by both doctors would be fully discoverable, without exception or limitation. This is untenable. It is possible that the information contained in the doctors' files is relevant to the cause or is irrelevant but innocuous. It is equally possible that the information contained in the documents, whether accumulated over years of treatment by the family physician or noted in the general medical history which most doctors take from new patients before beginning a specific course of treatment, could reveal a past or current medical condition which is totally unrelated to the condition in issue and the revelation of which would strike at the heart of the physician-patient privilege.

> Full and unlimited disclosure of the subpoenaed medical records could reveal, for example, that the plaintiff had been tested for or diagnosed as having AIDS or some other sexually transmitted disease or that a female plaintiff had undergone an abortion procedure. Clearly, none of this information has the slightest causal or historical connection to the condition in issue nor any

possible relevance to the trial of this cause. It would not be admissible at trial, nor could it be characterized as "reasonably calculated to lead to the discovery of admissible evidence." *A construction of the rules governing the discovery process which would authorize the disclosure of unrelated and potentially embarrassing or ruinous information could only undermine the purpose of the physician-patient privilege.*

*Canfield v. Sandock*, 563 N.E.2d at 530 (emphasis supplied). I therefore would decline the Hunleys' invitation to deem a claim of impairment that includes an assessment of disability of the whole person as a wholesale waiver of the physician-patient privilege.

The real issue here is whether a discovery request pursuant to T.R. 34(C) can be used to attain a personal injury plaintiff's medical records directly from providers without the patient first having a chance to review the materials that the provider proposes to send. I would answer that question in the negative based upon three cases previously decided by Indiana appellate courts, *i.e.*, *Canfield v. Sandock*, 563 N.E.2d 526, *Owen v. Owen*, 563 N.E.2d 605 (Ind.1990), and *Cua v. Morrison*, 626 N.E.2d 581 (Ind.Ct.App.1993).

In *Canfield v. Sandock*, 563 N.E.2d 526, as here, the court focussed generally upon the "task of delineating the respective boundaries of the physician-patient privilege and the scope of discovery where the two are in conflict." *Id.* at 528. The Andreattas are correct in noting that *Canfield* did not specifically address the propriety of a T.R. 34(C) request directly to a health care provider. Indeed, my research reveals that the instant case is the first in which an Indiana appellate court has decided that a T.R. 34(C) discovery request can be served directly upon a health care provider and that the subject of the records need not be given the opportunity to inspect the materials produced in response to the request.

The majority accepts the Hunleys' argument that they are entitled to receive medical records directly from Patricia's providers unless the Andreattas assert a claim of privilege with regard to specific records. Citing *Cua v. Morrison*, 626 N.E.2d 581 and *Can-*

*field v. Sandock*, 563 N.E.2d 526, the majority concludes that it was incumbent upon the Andreattas to identify which of those documents they believed were privileged. The majority is satisfied that the privilege is protected and confidentiality is not threatened because Patricia knows what is in her record and may view her own records at will. Therefore, the majority reasons, Patricia does not need to review her records in order to assert a claim of privilege because she already knows what is in her own records.

This view misses the mark for two reasons. First, although Patricia knows what is in her records, she does not know what is in the materials that will be sent to the Hunleys in response to the discovery request. For instance, at oral argument before this court, the Andreattas' counsel recounted previous occasions when a health care provider mistakenly included the medical records of others, including family members, in the materials sent in response to a civil defendant's discovery request. Second, a discovery request such as the one at issue here directs the health care provider to send medical records relevant to a certain injury or condition. Such an order allocates to the provider the responsibility of deciding which materials comply with the request and which do not. If the provider decides that certain material is responsive, then the material is sent, regardless of whether the plaintiff would agree that it should be included. The plaintiff would not know what material was sent because he did not have a chance to inspect the materials that the provider proposed to send prior to their being sent. The curious result of such a rule is that, while we do not ask the defendant to trust the plaintiff on the question of whether medical records provided by the plaintiff were complete and accurate, we require the plaintiff to trust that the provider will send materials that comply perfectly with the defendant's request, without mistake of fact or judgment. I believe that this asks too much of a plaintiff, especially when the material at issue is something as sensitive as medical records.

In my view, there is an analogous situation in the litigation setting. Before trial, both sides are required to divulge the evidence that they propose to introduce, including physical evidence. This permits the other party an opportunity to view the evidence in order to avoid surprises. Presumably, in most cases, the parties avail themselves of the opportunity and examine the evidence. Yet, when the evidence is introduced at trial, counsel is afforded the opportunity to inspect the evidence which has previously been viewed in order to insure that it is the same evidence and in the same condition as when last he saw it. The majority's holding would deny that opportunity to the Andreattas when it comes to Patricia's medical records.

It seems to me that the majority implicitly agrees with the Hunleys' view that the Andreattas' motion to quash is the functional equivalent to an assertion of privilege as to all of Patricia's records. I do not. The Andreattas merely seek the right *to inspect* the medical records in order *to determine* whether any of the material contained therein is subject to a claim of privilege. I believe this is the correct perspective from which to consider the Andreattas' motion to quash.

*Canfield v. Sandock* and *Cua v. Morrison*, the preeminent cases decided by our appellate courts on the subject, have recognized the importance of protecting the physician-patient privilege and have sought to preserve the privilege, while still affording defendants in personal injury lawsuits access to all of a plaintiff's medical records that are relevant to that plaintiff's particular claim. I believe that protection of the physician-patient privilege requires, at a minimum, that the plaintiff should have an opportunity to inspect the materials that a health care provider proposes to send in response to a discovery request, in order to determine whether to assert a claim of privilege. I would therefore reverse because the trial court abused its discretion in fashioning a discovery method that poses "a substantial threat that privileged information [will] be disclosed and that such information is not required for a fair and efficient trial." *Cua v. Morrison*, 626 N.E.2d at 584.

Finally, I write briefly to address the question of what would constitute an appropriate discovery procedure in the instant case, *i.e.*, one that affords the Andreattas an opportunity to inspect while at the same time assur-

ing the Hunleys that they will have access to *all* of Patricia's medical records that are relevant and discoverable. I must state at the outset that I do not share the majority's view that the procedure proposed by the Andreattas is fatally burdensome. Be that as it may, a trial court is afforded wide latitude in controlling the discovery process. *Canfield v. Sandock*, 563 N.E.2d 526. The relevant trial rules and the case law interpreting those rules set out the parameters within which the trial court must operate in controlling discovery. In particular, I note the discussion to that end in *Canfield* that appears on pages 530–31. Other than identifying the broad boundaries set out in the aforementioned rules and case law, I would decline any invitation to fashion a specific discovery procedure in the instant case.

I note in this regard that the majority has correctly observed that, "[b]ecause the scope of discovery is highly dependent on the facts of each case, the fact-sensitive nature of discovery issues requires a high degree of deference to the decision of the trial court." *Op.* at 1159. It is precisely for this reason that T.R. 34(C) and the cases interpreting T.R. 34(C) do not prescribe rigid discovery procedures to be followed by trial courts. Because diverse questions arise in an endless variety of settings, trial courts must be afforded wide latitude in fashioning orders that facilitate permissible discovery, while at the same time protecting privileged matters. When reviewing questions arising under T.R. 34, we examine whether the court accomplished both goals in that particular case. Because the propriety of a given procedure is fact-sensitive, one cannot say whether a procedure upheld on appeal in one case would not later be found erroneous in a different case. Therefore, I cannot agree with the majority's view that the procedure suggested by the Andreattas, if approved *in this case*, "impose[s] such a procedure upon medical providers or our trial courts." *Op.* at 1158. Certainly, the majority is correct in stating that "neither *Canfield* nor *Cua* [graft] this requirement onto Trial Rule 34(C)." *Op.* at 1158. I reiterate, however, that cases deciding that a specific discovery procedure was appropriate in a particular case should not be interpreted as approving of that procedure in

any other case. In summary, I do not share the majority's views that the procedure advocated by the Andreattas is "tortuous," *id.*, or that approving of the procedure in this case would establish the procedure as preferred, or even acceptable, in other cases.

Because the situations in which trial courts are called upon to guide the discovery process are many and varied, there is no utility in an appellate court crafting an acceptable procedure in this case, or any other case, for that matter. If such were done, there is a danger that trial courts and litigants would construe the resultant procedure as bearing the official sanction of our appellate courts as a preferred procedure to be used across the board. It is enough to say that the trial court should fashion a discovery procedure that both (1) gives the Andreattas a chance to inspect copies of Patricia's medical records that will be produced in response to the Hunleys' discovery request in order to determine whether a claim of privilege is appropriate, and (2) assures the Hunleys that they will be able to review all of Patricia's records that are not subject to a valid claim of privilege.

I would reverse and remand for further proceeding consistent with these views.